**In re Keith Layne SOWERS, Debtor.**

**Bankruptcy No. 93–30415–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 8, 1994.

Debra D. Corcoran, Richmond, VA, for debtor.

Mark A. Fleckenstein, Richmond, VA, for Drs. Maughan and Trice.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on Keith L. Sowers's ("Sowers's" or "The Debtor") renewed motion for sanctions against Mark Fleckenstein ("Fleckenstein"), his law partner Mark Ames, and Fleckenstein's clients, Drs. Maughan & Trice (collectively "The Defendants"). Upon consideration of the arguments of counsel and evidence presented at the October 19, 1993, hearing, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

This matter had its genesis when Fleckenstein on behalf of Drs. Maughan and Trice obtained a pre-bankruptcy judgment for $427.00 against Sowers in the General District Court of the City of Richmond ("The General District Court"). In order to satisfy that judgment, Fleckenstein caused to be executed a garnishment summons against Sowers's employer, Wilma Ray, Inc. ("Wilma Ray") on October 19, 1992. The garnishment summons gave January 12, 1993, as the garnishment's return date. By that date, Wilma Ray had failed to perform any of the three options listed on the summons—it had not

filed a written answer with the issuing court, delivered payment to that court, or appeared in court on January 12, 1993, to answer the suggestion for summons in garnishment of the judgment creditor that, by reason of the lien of writ or fieri facias, there was a liability upon the garnishee.

Because of Wilma Ray's failure to honor the garnishment summons, a show cause summons was issued against it commanding Wilma Ray to appear on March 16, 1993, to explain "why judgment in the amount of $475.33 [1] or such other amount as may be proved together with costs, should not be entered *against the Garnishee*". Show Cause Summons—Garnishment Proceedings, General District Court for the City of Richmond, entered February 9, 1993, (emphasis supplied). This March 16, 1993, hearing was eventually rescheduled until April 20, 1993. On that date, the General District Court entered judgment against Wilma Ray for failure to honor the garnishment summons and Judge Marsh issued the following order:

> After reviewing the suggested case provided and upon consideration of the evidence presented, the Court rules that *the Garnishee* shall be Ordered to pay the sum of $475.33, net of any credits *as a result of its failure to respond to the Garnishment Summons* served on it on October 29, 1992, and returnable on January 12, 1993, to this Court.

Order of the General District Court for the City of Richmond, File No. 92–62308, entered April 20, 1993, (emphasis supplied).

While Fleckenstein was pursing Wilma Ray for not honoring the garnishment summons, Sowers declared bankruptcy on February 1, 1993. Through the homestead exemption, he declared that all monies garnished by Wilma Ray were now his. In addition, on April 5, 1993, Sowers, through his attorney Debra D. Corcoran ("Corcoran"), filed a motion asking that the defendants be held in contempt and for sanctions pursuant to 11 U.S.C. § 362(h). In support of this motion, Sowers stated that the defendants were violating the automatic stay by attempting to obtain judgment against the garnishee, Wilma Ray, for failure to answer the October 19, 1993, judgment. He alleged that the defendants' action against Wilma Ray were actually a thinly veiled attempt to harass him and his employer.

On April 12, 1993, this Court conducted a duly scheduled hearing on the debtor's motion and denied it finding that "the conduct of the creditors and their attorneys does not rise to the level of civil contempt." Order of the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, Bankruptcy Case No. 93–30415–S, entered April 15, 1993. No appeal was taken from that order.

The month of May brought Sowers's discharge from Chapter 7 and a renewed motion by him on May 27, 1993, again through Corcoran, for sanctions and, because his case had been closed, a motion to reopen his bankruptcy case in order to prosecute this renewed motion. As additional support for his motion, Sowers stated that the April 20, 1993, judgment handed down by the General District Court was the first time Fleckenstein actually received judgment on Wilma Ray. On June 30, 1993, the Court heard the debtor's motions and ultimately took them under advisement, ordering the parties to return to the General District Court and ask that court to clarify whether the April 20, 1993, judgment was against Sowers or Wilma Ray.

Unfortunately, this request was never honored. From the record introduced at trial, it appears that a request for clarification of the General District Court's April 20, 1993, judgment was filed. However, it appears that the General District Court did not address that matter. In fact the only matter that was addressed by that court was the debtor's motion to rehear which was granted and ultimately resulted in the April 20, 1993, judgment being invalidated based on the garnishors' failure to serve the garnishment summons on the proper parties.

---

1. This amount includes the original $427.00 judgment principal, $22.33 in interest, $10.00 in judgment costs, and $16.00 in garnishment costs.

Thus, the parties appear in front of this Court empty-handed, without the clarification requested. Nevertheless, the Court is prepared to render a decision on this matter.

### Conclusions of Law

■ It is elementary that once a debtor files for bankruptcy the automatic stay prevents a creditor from attempting to collect his debt against the bankrupt. *See* 11 U.S.C. § 362 and *Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371, 372 (10th Cir.1990). Willful violations of the stay are dealt with under 11 U.S.C. § 362(h), which allows for recovery of actual damages and even punitive damages in the appropriate circumstances. However, in order to violate the automatic stay, the creditor's actions must be directed at the debtor or estate property.

■ In the instant case, the only time the defendants demanded payment from the debtor was through a pre-petition garnishment. Pre-petition collection activities do not violate 11 U.S.C. § 362's automatic stay. After the debtor's bankruptcy filing all collection efforts by the defendants against Sowers appear to have ceased. Instead, the defendants shifted their focus post-petition to Wilma Ray for its failure to honor the pre-petition garnishment summons. Attempting to collect money which was supposed to be garnished from an employee is not an action against the employee but is instead an action against the employer-garnishee. When Wilma Ray failed to take any action in response to the garnishment summons, the $475.33 that was supposed to be garnished from Sower's wages became a corporate liability. It was this corporate liability which the defendants were trying to collect after the debtor's petition was filed, not the debt owed by Sowers.[2] This interpretation is supported by *Lynch v. Johnson,* 196 Va. 516, 84 S.E.2d 419 (1954) which stated:

"The word 'garnishment' is derived from the Norman French Word 'garnir,' meaning to warn. (citations omitted). Thus, a summons of garnishment under our statutes is a warning to the garnishee not to pay the money or deliver the property of the judgment debtor in his hands, upon penalty that if he does *he may subject himself to personal judgment.*"

*Id.,* 84 S.E.2d at 421 (emphasis supplied).

Other bankruptcy courts have taken positions similar to the Court's. In *In re Gray,* 97 B.R. 930 (Bankr.N.D.Ill.1989)[3], a court found that a creditor's post-petition collection efforts against a debtor's employer resulting from that employer's failure to respond to garnishment interrogatories did not violate the automatic stay, stating:

The long and the short of this case is that no property of the estate or Debtor is involved here, and the outcome does not directly or indirectly affect this case or the Debtor's moneys or his discharge rights. Therefore, this Court lacks either core or related jurisdiction over the moneys withheld, and finds no direct or indirect violation of § 362 or § 524(a).

*Id.* at 937.

This Court's interpretation is also supported by the General District Court's orders. None of the orders that were introduced mention that Sowers was obligated on the $475.33 debt, only that Wilma Ray, as a recalcitrant garnishee, was liable.

Even though they were only trying to collect the debt owed to them by Wilma Ray, the debtor argues that the defendants' tenacious pursuit of his employer was in reality an indirect attempt to harass him and put his employment in a precarious status. The Court finds this argument unconvincing; first, because he presented no compelling evidence to support such an allegation and

---

**2.** *See Nadine Bour v. Deep Pacific Fishing Co.,* 122 Wash.2d 829, 864 P.2d 380 (1993). There the court stated: "[w]e agree ... and hold the automatic stay does not preclude enforcement of a default judgment against a garnishee/employer *because the judgment does not affect property of the debtor." Id.* at 834, 864 P.2d 380 (emphasis supplied).

**3.** *Accord In re Waltjen,* 150 B.R. 419 (Bankr. N.D.Ill.1993). There the Court held: "[t]hus, an action against an employer for its failure to comply with the garnishment procedures will not be an action against the debtor or his estate when the creditor is solely going after the assets of the non-debtor employer." *Id.* at 426.
*Contra Matter of Warren,* 7 B.R. 201 (Bankr. N.D.Ala.1980).

second, because Virginia Code § 34–29(f) [4] prohibits an employer from discharging an employee because the employee has become subject of a garnishment.

■ The debtor also seems to contend that since the defendants did not receive a judgment against Wilma Ray until April 20, 1993, some three months after the debtor's bankruptcy filing, all attempts to collect Wilma Ray's obligation prior to that date were in reality collection attempts against the debtor. The Court again finds no merit in this argument. As we stated above, when Wilma Ray failed to honor the garnishment summons, it became liable to the defendant-garnishors. Despite the fact the parties failed to bring back to this Court a clarification of the General District Court's April 20, 1993, judgment, this Court finds that the defendants were trying to collect a corporate obligation not harass the debtor. Whether or not the defendant's collection activities prompted Wilma Ray to harass Sowers is not relevant to the Court's determination.

■ Finally, the fact that the garnishment summons was later invalidated by the General District Court due to improper service is likewise irrelevant in this case. Instead of delving into the fineries of state garnishment law to decide whether or not the garnishment summons was valid, this Court restricts its attention to the determination of against whom the defendants' post-filing collection activities were directed. As indicated, this Court finds as a matter of law that the defendants and their counsel were trying to collect a debt owed to it by Wilma Ray, not Sowers.

■ In sum, collection activities against a debtor's employer on a corporate debt that was created because of the failure of that employer to honor a pre-petition garnishment summons do not violate the automatic stay. For this reason, the debtor's motions must fail.

---

4. In full, the Virginia Code section reads: "No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." Va. Code Ann. § 34–29(f) (Michie 1993).