**UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Kenneth P. DIMMICK, Defendant,**

v.

**WOODY CREEK TAVERN, Garnishee–Appellee.**

No. 94CA1226.

Colorado Court of Appeals, Div. III.

Feb. 22, 1996.

As Modified on Denial of Rehearing March 28, 1996.

.Roger Moore, Denver, for Plaintiff–Appellant.

Dennis B. Green, Aspen, for Garnishee–Appellee.

Opinion by Judge BRIGGS.

Plaintiff, United Guaranty Residential Insurance Company (judgment creditor), appeals the trial court's order upholding the calculation by Woody Creek Tavern (garnishee) of the garnishable earnings of defendant, Kenneth M. Dimmick (debtor). The judgment creditor contends the trial court erred in its determination of the garnishee's liability under the judgment creditor's writ of garnishment and further erred in refusing to order the garnishee to pay its attorney fees. We reverse the order as it pertains to the calculation of earnings and affirm it as to attorneys fees.

In November 1993, the judgment creditor obtained a writ of garnishment against the debtor and had it served on the garnishee, the debtor's employer. The garnishee answered the writ, providing its calculations of the debtor's earnings and exemptions and stating that no earnings were available for garnishment. The judgment creditor traversed the answer, challenging the garnishee's calculations and its conclusion that no garnishable earnings existed.

At the outset of the traverse hearing, the garnishee conceded that it had erroneously deducted from earnings a debt owed to it by the debtor. However, it maintained that tips should not be included in the calculation of earnings for garnishment purposes because the debtor's tips were neither controlled by it nor owed to the debtor. The trial court agreed and determined that, after subtracting exemptions from the debtor's earnings calculated without including tips, the judgment creditor was entitled to judgment against the garnishee in the amount of $29.72, plus costs. The court ordered each party to pay its own attorneys fees. This appeal followed.

Soon after the judgment creditor filed its notice of appeal, the debtor filed for Chapter 7 bankruptcy. Several months later, the bankruptcy court concluded the bankruptcy proceedings by releasing the debtor from all dischargeable debts, including the debt owed to the judgment creditor.

## I.

In its answer brief, the garnishee initially argues that, because the judgment creditor failed to take timely action in the bankruptcy proceedings, it is barred from taking any action to collect on the debt owing from the debtor, including proceeding with this appeal. We disagree.

The release from dischargeable debts enjoins creditors from collecting discharged debts as personal liabilities of the debtor. *See* 11 U.S.C. § 524(a)(2) (1994). It does not, however, prevent the judgment creditor from seeking to collect from the garnishee earnings of the debtor which the garnishee had a duty to withhold and pay to the judgment creditor. *See* 11 U.S.C. § 524(e) (1994) (with exception not applicable here, discharge of a debt of the debtor does not affect the liability of any other entity on such debt); *City & County of Denver v. Jones,* 85 Colo. 212, 274 P. 924 (1929) (after service of writ of garnishment, garnishee paid debtor's wages to debtor's assignee at its own risk); *In re Marriage of Flohr,* 672 P.2d 1024 (Colo.App.1983) (garnishee liable for not withholding funds of debtor); *see also In re Sowers,* 164 B.R. 256 (Bankr.E.D.Va.

1994) (action against garnishee after debtor's bankruptcy concerned garnishee's liability, not debtor's debt). The discharge of the debtor's debts therefore does not affect this appeal.

## II.

The judgment creditor contends the trial court erred in its conclusion that, in determining the potential liability of the garnishee, tips should not be included in "earnings" as defined in Colo.Sess.Laws 1991, ch. 65, § 13–54.5–101(2)(a)(I). We agree.

### A.

Section 13–54.5–102(1), C.R.S. (1987 Repl. Vol. 6A) provides that, to the extent that earnings are not exempt from garnishment, a judgment creditor shall be entitled to garnish the earnings of a judgment debtor.

Two years preceding the garnishment in question, "earnings" had been defined under § 13–54.5–101(2), C.R.S. (1987 Repl.Vol. 6A) as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, or deferred compensation plan, avails of health, accident, or disability insurance, or otherwise." In the following year, however, the General Assembly amended the definition. The reference to "avails of any pension or retirement benefits, or deferred compensation plan" was deleted, and the remainder of the definition was divided into two subparts. At the same time, the concluding phrase, "or otherwise," was also stricken from the definition of "earnings." *See* Colo.Sess.Laws 1991, ch. 65, § 13–54.5–101(2)(a)(I) & (II). The statute in this amended form was in effect at the time of the garnishment in question.

In 1994, the definition of "earnings" was again amended to read "[c]ompensation paid or payable for personal services, whether denominated as wages, *including tips calculated pursuant to the federal internal revenue service percentage of gross wages,* salary, commission, or bonus...." Section 13–54.5–101(2)(a)(I), C.R.S. (1995 Cum.Supp.) (emphasis added).

■ We must determine whether, in this series of amendments, the definition of "earnings" in § 13–54.5–101(2) included tips at the time of the garnishment in question. For several reasons, we conclude that it did.

#### B.

■ When a statute is ambiguous, courts may consider the statute's legislative history, prior enactments of the statute, and subsequent amendments to determine legislative intent. *See Thurman v. Tafoya,* 895 P.2d 1050 (Colo.1995); *Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd.,* 890 P.2d 119 (Colo.1995).

■ When the General Assembly amends a statute, an intent to change the law is presumed. However, the presumption may be rebutted by a showing that the General Assembly amended the statute in order to clarify an ambiguity. *See Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra.*

■ Whether an amendment was intended as a change or clarification is a question of statutory interpretation subject to our independent review. In making our determination we may refer to the language of the statute and to the legislative history of the amendment. *See Douglas County Board of Equalization v. Fidelity Castle Pines, Ltd., supra.*

The definition of "earnings" in § 13–54.5–101(2) before 1991, "compensation paid or payable for personal services, whether denominated as wages ... or otherwise," is sufficiently broad to include tips. However, it is unclear whether, in deleting the words "or otherwise" from the definition in 1991, the General Assembly still intended tips to be included as part of earnings.

The legislative history of the 1991 amendment gives no indication of an intent to change the definition of earnings to exclude tips. Rather, the General Assembly's focus was on deleting the reference to pension or retirement benefits and deferred compensation plans. *See, e.g.,* Tape Recordings of Testimony before House Judiciary Committee on H.B. 91–1233, 58th General Assembly, First Regular Session (February 12, 1991).

Furthermore, the legislative history of the 1994 amendment indicates that the General Assembly was then amending the definition of "earnings" in 13–54.5–101(2)(a)(I) in response to what it considered an incorrect interpretation of the statute that had been asserted after the 1991 amendment in an unreported and unidentified court proceeding. According to a sponsor, the purpose of the 1994 amendment was to clarify that the definition of "earnings" had always been intended to include tips. *See* Tape Recordings of Testimony before Senate on S.B. 94–088, 59th General Assembly, Second Regular Session (February 15, 1994).

The sequence of amendments to the statute leads to the same conclusion. Were we to conclude otherwise, it would mean that the General Assembly in 1991, while focusing on pension and retirement benefits and deferred compensation plans, separately intended to exclude tips but then only two years later once again included tips. No reason has been suggested for such shifts in the General Assembly's intent.

Moreover, construing the statute as it existed at the time of the garnishment in question to exclude tips from the calculation of earnings subject to garnishment would lead to inequitable results. During this period, a judgment creditor garnishing the wages of an employee whose earnings included tips would not be able to collect on a judgment to the same extent as a judgment creditor of an employee earning the same salary but with no tips. By construing the amendment as a clarification, the inequitable result is avoided.

The garnishee argues that the debtor's tips should not be included in the calculation of earnings under § 13–54.5–101(2) because only earnings owed by the garnishee to the judgment debtor are subject to garnishment under § 13–54.5–103, C.R.S. (1987 Repl.Vol. 6A). The argument confuses the differing purposes of the separate calculations.

Under the statutory definition in § 13–54.5–101(2), "earnings" includes a variety of forms of compensation and results in the calculation of a maximum amount potentially subject to garnishment. However, regardless of the amount calculated as potentially

subject to garnishment, the garnishee's liability is limited under § 13–54.5–103 to those earnings actually "owed by the garnishee to the judgment debtor."

Including tips in the definition of "earnings" thus avoids inequitable results for judgment creditors without placing any undue liability on garnishees. We therefore can discern no reason why the General Assembly would have intended to exclude tips during the time between the 1991 and 1994 amendments.

For these reasons, we conclude that the 1994 amendment "simply made clear" that the statute always included tips as "earnings" for purposes of calculating the amount subject to garnishment. *See Rickstrew v. People,* 822 P.2d 505, 508 (Colo.1991). Thus, it is necessary to remand the cause for recalculation of the debtor's earnings during the pay periods in question to include the amounts he reported to his employer as having been earned in tips and for entry of an order requiring the garnishee to pay the judgment creditor any garnishable earnings owed by the garnishee to the debtor for those pay periods. *See* § 13–54.5–103(1), C.R.S. (1987 Repl.Vol. 6A).

### III.

The judgment creditor contends the trial court erred in failing to award its attorneys fees pursuant to C.R.C.P. 103 and § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). In the circumstances presented here, we are not persuaded.

■ C.R.C.P. 103 § 8(b)(5) provides that at any hearing upon a traverse of an answer to a writ of garnishment, the court shall make such orders as to reasonable attorney fees, costs, and expenses of the parties to such hearing as are just. An award of attorneys fees under this rule is at the discretion of the trial court. *See United Bank v. Colorado State Treasurer,* 797 P.2d 851 (Colo. App.1990).

■ In contrast, the court is required to award fees if § 13–17–102 applies. However, the statutory requirement applies only if the court finds that an attorney or party brought or defended an action that lacked substantial justification. *See* § 13–17–102(4), C.R.S. (1987 Repl.Vol. 6A); *In re Estate of Finkelstein,* 817 P.2d 617 (Colo.App.1991).

The judgment creditor correctly notes that the garnishee improperly deducted from the debtor's earnings a debt owed to it by the debtor. However, it points to no place in the record, and we have found none, where it argued to the trial court that the improper deduction for amounts the debtor owed the garnishee entitled it to an award of fees under § 13–17–102. Nor does the record support the judgment creditor's argument on appeal that this deduction "led to the necessity of filing a traverse of answer." Rather, in its motion for hearing upon its traverse of answer and its opening statement at the hearing, the judgment creditor raised only the issue whether earnings included tips.

■ The garnishee's manager quickly conceded at the hearing that the deduction for amounts the debtor owed the garnishee was improper. Thus, the issue of the propriety of this deduction was not contested during the hearing. Even without it, the hearing would have been required to resolve the remaining issue, which was contested in good faith and with substantial justification. Under these circumstances, we find no reversible error in the trial court's order that each party pay its own attorneys fees.

The order of the trial court is reversed as to the determination of the garnishee's liability under the writ of garnishment and affirmed as to the payment of attorney fees, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

JONES and RULAND, JJ., concur.