In re Milton **SCHNEIDERMAN**,
Debtor.

No. 99–00521.

United States Bankruptcy Court,
District of Columbia.

Aug. 16, 2000.

Wendell W. Webster, Webster and Fredrickson, Washington, DC, trustee.

### SUPPLEMENTAL DECISION RE TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE

S. MARTIN TEEL, Jr., Bankruptcy Judge.

■ Wendell W. Webster, the chapter 7 trustee, seeks approval of a settlement agreement with the debtor Schneiderman that would release his employer Madison Residential Development Company ("Madison"), from any liability to the estate under D.C.Code Ann. § 16–579. Because § 16–579 does not appear to apply to services rendered by Schneiderman to his employer prior to issuance of a writ of attachment, the court will approve the settlement agreement.

Section 16–579, part of the D.C.Code's provisions governing garnishment via writs of attachment, provides:

> Where the judgment debtor claims or is proved to be rendering services to or employed by a relative or other person or by a corporation owned or controlled by a relative or other person, without salary or compensation, or at a salary or compensation so inadequate as to satisfy the court that the salary or compensation is merely colorable and designed to defraud or impede the creditors of the debtor, the court may direct the employ-

er-garnishee to make payments on account of the judgment, in installments, based upon a reasonable value of the services rendered by the judgment debtor under his employment or upon the debtor's then earning ability.

Chase Manhattan Bank ("Chase") opposes the trustee's motion, contending that the trustee's right to assert § 16–579 against Madison, with respect to services which Schneiderman rendered to Madison prepetition, would yield substantial funds for the estate.[1]

Chase began to invoke § 16–579 against Madison prepetition but never obtained issuance of a writ of attachment. The parties view the trustee as being entitled to assert whatever rights Chase would have had (or whatever rights other creditors could have had) by virtue of invoking § 16–579 with respect to prepetition services rendered by the debtor to his employer Madison.

 They presumably maintain this view based on 11 U.S.C. § 544(a)(2) which provides in relevant part that:

(a) The trustee shall have, as of the commencement of the case, ... the rights and powers of ...—

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such

credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]

Section 544(a)(2) "vest[s] the trustee with the equitable rights of a hypothetical creditor with a writ of execution returned unsatisfied." 5 *Collier on Bankruptcy* ¶ 544.06 (15th ed. rev.Mar.2000).[2] One of the rights an empty-handed execution creditor would have had on the petition date would be to take the necessary steps to invoke § 16–579. So there can be no doubt that under § 544(a)(2) the trustee should be viewed as having the right to serve a writ of attachment on Madison and thereby to invoke § 16–579. But for reasons developed in parts III through VI below, invoking § 16–579 on the petition date would have probably have yielded a hypothetical unsecured creditor nothing.

By reason of the parties' focus on when Chase began its efforts to invoke § 16–579 and what rights Chase acquired, it appears that they may also have viewed the trustee as entitled to assert Chase's rights by virtue of 11 U.S.C. § 544(b)—a provision granting the trustee certain rights of an actual creditor holding an unsecured claim. If the trustee stepped into Chase's shoes under § 544(b), that would likely yield the estate nothing more than the trustee could achieve under § 544(a)(2): Chase never

---

1. The settlement agreement relates as well to Schneiderman's purchase from the estate of certain nonexempt assets for $14,572.00. Chase does not object to that aspect of the settlement. The settlement agreement calls for Schneiderman to pay $152,072.00 in the aggregate, so $137,500.00 is attributable to the trustee's release of his rights under § 16–579 (and his release of Schneiderman from any other claims of the estate, no such claims having been identified by Chase as being a basis for disapproving the settlement agreement).

2. Section 544(a), the so-called "strong-arm clause," gives the trustee whatever rights a creditor would have at state law to effect collection as of the petition date. Boyce, *Koch Refining and In re Ozark: the Chapter 7 Trustee's Standing to Assert an Alter Ego Cause*

*of Action*, 64 Am. Bankr.L.J. 315, 320 (1990) ("Boyce"). Section 544(a) has been described as allowing the trustee to become "the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." *In re Kravitz*, 278 F.2d 820, 822 (3d Cir.1960), quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss.1932). In particular, § 544(a)(2) gives the trustee "a procedural assist in order to employ state equitable remedies to reach property obtainable through state fraudulent conveyance laws or supplemental proceedings." Boyce at 321, citing Countryman, *The Use of State Law in Bankruptcy Cases (pt. II)*, 47 N.Y.U. L.Rev. 631, 650 (1972).

served a writ of attachment on Madison and is thus, for reasons developed below, almost certainly in the position of any other unsecured creditor.

■ Moreover, § 544(b) at most authorizes the trustee to exercise the actual unsecured creditor's nonbankruptcy law powers to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor." The debtor arguably made no transfer of property (instead, he rendered services for inadequate compensation) and he incurred no obligation to Madison, thus arguably rendering § 544(b) inapplicable.[3] However, § 16–579 is a form of piercing the corporate veil in reverse (meaning, treating the employer's property as the debtor's) and treats the employee as having left money in the employer-corporation. *IBF Corp. v. Alpern*, 487 A.2d 593, 596–97 (D.C.1985). Section 16–579, in other words, treats the employee as making a fraudulent conveyance in derogation of the common law rule that an employee working for free does not make a transfer that is subject to the law of fraudulent conveyances. So the court views § 544(b) as likely applicable because § 16–579 treats the corporate treasury as consisting of property transferred by the debtor to the extent he took inadequate compensation. The court need not decide this issue because Chase's failure to serve a writ likely makes its § 16–579 rights

worthless as to prepetition services Schneiderman rendered Madison.[4]

## I

Chase recovered a judgment in the district court against the debtor for more than $8,000,000 on January 3, 1998. Chase never served a writ of attachment on Madison. Instead, on February 19, 1999, Chase filed in the district court a motion ("the Garnishment Motion"), requesting that the district court order the clerk of the court to issue a writ of attachment, directed to Madison, which would order a levy against Madison's corporate treasury pursuant to § 16–579.[5] Chase asserted that the unpaid reasonable value of the services rendered to Madison by the debtor for the years 1995 through 1998 was $656,874 and requested that the writ direct that this amount be paid upon issuance of the writ. Chase asserted that the unpaid reasonable value of the debtor's services currently rendered to Madison was $16,112 per month (after taking into account the $6,656 that Madison was paying the debtor annually). Chase requested that the writ direct that, beginning with the year 1999, Madison pay within 15 days after the end of each month the sum of $16,112 per month.

On March 15, 1999, less than one month after the filing of the Garnishment Motion, the debtor filed his voluntary petition un-

---

**3.** Even if § 544(b) is inapplicable, Chase's claim nevertheless is relevant under § 544(a)(2) in addressing the rights of a hypothetical creditor invoking § 16–579: such a creditor could point to Chase's outstanding debt as evidence that the debtor's acceptance of inadequate compensation was "designed to defraud or impede the creditors of the debtor," an element of § 16–579 in the case of services rendered for inadequate compensation.

**4.** Had Chase actually served a writ of attachment on Madison, and if this would have given Chase secured status as to amounts recoverable under § 16–579, then § 544(b) would additionally be inapplicable because Chase's § 16–579 rights would not be those of an unsecured creditor. This would have pre-

sented a question of whether the trustee could avoid Chase's writ as a so-called preference under 11 U.S.C. § 547(b) and preserve the avoided writ for the benefit of the estate under 11 U.S.C. § 550. As in the case of § 544(b), § 547(b) only applies in the case of a "transfer of an interest of the debtor in property." So, as in the case of § 544(b), the applicability of § 547(b) would turn upon whether § 16–579 treats the employer as holding property of the debtor.

**5.** The asserted grounds were that the debtor renders services to Madison (of which the debtor's wife is a 50% shareholder) but "takes inadequate compensation in order to defraud or otherwise impede Chase." Garnishment Motion at 1.

der chapter 7 of the Bankruptcy Code (11 U.S.C.).

## II

In support of the motion to approve the compromise, the trustee and the debtor asserted that there was a substantial risk that any recovery under § 16–579 would be subject to a cap of 25% of the unpaid portion of the reasonable services the debtor rendered. But the court doubts that there is any substantial litigation risk on this issue.

Section 16–579 is contained in a subchapter of the D.C.Code dealing with wage attachments. Under D.C.Code § 16–572, wage attachments are capped at no more than 25%. This cap, and a similar cap of the Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1677, nevertheless do not appear to apply to recoveries under § 16–579.

■ This is because § 16–579 views the debtor as leaving his or her money in the corporation-employer. *IBF Corp. v. Alpern,* 487 A.2d at 597. What the employer must pay under § 16–579 are not wages the debtor had bargained for and counted on using to meet his living expenses. The debtor having elected to perform services for no wages (or for inadequate wages), § 16–579 empowers the court to direct the employer to pay the judgment creditor an amount "based upon a reasonable value of the services rendered by the judgment debtor under his employment or upon the debtor's then earning ability."

This enrichment of the corporation at the expense of a creditor's attempt to attach the debtor's earnings is thus not even traceable to actual compensation. It is traceable instead to what the debtor, in the labor market, could have commanded—imputed compensation foregone to enrich the corporate treasury.

■ But even if amounts recoverable under § 16–579 could be viewed as traceable to actual compensation—that is, compensation which the debtor could have ob-

tained had he insisted on it and had the employer agreed to it—that does not suffice to make the statutory cap of D.C.Code Ann. § 16–572 on wage garnishments, or the similar federal cap, applicable. In *Kokoszka v. Belford,* 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the Court held that the earnings that are subject to the statutory cap are limited to "periodic payments of compensation and [do] not pertain to every asset that is traceable in some way to such compensation" (quoting the court whose judgment was affirmed). This was because the statutory cap was intended "to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Id.* Under the rationale of *Kokoszka,* a recovery under § 16–579 is not subject to the statutory caps because the recovery is not a periodic payment of compensation.

## III

For reasons developed in parts IV and VI, below, § 16–579 would likely be held applicable only to services rendered after the issuance of a writ of attachment. This would make § 16–579 a tool of no utility to a chapter 7 trustee as to prepetition services.

■ Similarly, § 16–579 is of no use to the trustee in the case of postpetition services. A trustee has no right to employ § 544(a)(2) to pursue an attachment as to postpetition services, and hence no right to pursue the § 16–579 remedy that would apply to such services. By § 544(a)(2)'s express terms, a trustee is vested with rights that a hypothetical creditor has available "as of the commencement of the case"—that is, as of the filing of the petition which commences the case pursuant to 11 U.S.C. § 301, 302, or 303. A trustee's claims, as the holder of the rights of a hypothetical creditor under § 544(a)(2):

date only from the time the bankruptcy petition is filed. The claims and their

effects cannot be projected to any time before the petition or after it.

2 Epstein, Nickles & White, *Bankruptcy* § 6–61 at 121 (footnotes omitted).

This jibes with the fact that the debtor's compensation for postpetition services is expressly not property of the estate to be administered by the trustee. *See* 11 U.S.C. § 541(a)(6). So the trustee could not recover such compensation under the turnover provisions of 11 U.S.C. § 542.[6]

█ Similarly, § 544(b) does not apply to postpetition transfers. Although § 544(b) is silent on the point, Congress did not likely intend the reach of § 544(b) to turn on whether an actual creditor exists who, by virtue of the nondischargeable character of its claim, could pursue postpetition transfers by the debtor. Congress specifically addressed postpetition transfers of property of the estate in 11 U.S.C. § 549. It is likely that it would have similarly expressly addressed postpetition transfers of property of the debtor had it wished such transfers to be potentially avoidable by a trustee.

## IV

The court now turns to why § 16–579 would likely be given a restricted interpretation and begins by observing that § 16–579 is triggered only upon the service of a writ of attachment.

Section 16–579 does not use the term "attachment" but it does use the term "employer-garnishee." An examination of related provisions reveals that this term means an employer upon whom a writ of attachment has been served and that § 16–579 is intended to be invoked only after issuance of a writ of attachment.

First, the term garnishee is used to mean the entity upon whom a writ of attachment is served. Section 16–579 is part of chapter 5 ("Attachment and Garnishment"), title 16, D.C.Code Ann. A judgment is collected via issuance of a "writ of attachment and garnishment" (D.C.Code Ann. § 16–501(e)), with "attachment and garnishment" being referred to by shorthand throughout the chapter synonymously as an attachment or a garnishment (*see, e.g.,* D.C.Code Ann. § 16–511(a))("[a]n attachment shall be levied upon credits of the defendant, in the hands of a garnishee, by serving the garnishee with a copy of the writ of attachment" and D.C.Code Ann. § 16–519) ("[a] garnishee in an attachment proceeding may make any defense available to the defendant in the action in which the garnishment is issued"). The party upon whom the writ is served is referred to as the garnishee (*see, e.g.,* D.C.Code Ann. § 16–519).

Second, the term "employer-garnishee" is used to describe an employer upon whom a writ of attachment is served. The subchapter containing § 16–579 deals with attachment and garnishment of wages, with garnishment broadly defined as meaning "any legal or equitable procedure through which the wages of any individual are required to be withheld for payment of any debt." D.C.Code Ann. § 16–571(3). The terms "attachment" and "garnishment" are again used synonymously. *See* D.C.Code Ann. § 16–582 ("[t]his subchapter applies only with respect to attachments upon wages, as defined by section 16–571, issued on or after August 4, 1959,"

---

**6.** Generally a creditor is barred by the discharge injunction of 11 U.S.C. § 524(a)(2) from pursuing collection from the debtor's postpetition property. Were § 544(a)(2) interpreted as extending to postpetition property a hypothetical creditor could reach, this would mean that whenever a debtor is denied a discharge, the trustee could employ § 544(a)(2) to collect from the debtor's postpetition wages, with no hint in the Code that such an exception to § 541(a)(6) might exist.

The trustee could end up acting as a collection agent for creditors far into the future when the debtor is denied a discharge but is gradually accumulating postpetition assets. Although Congress could have elected to give chapter 7 trustees such powers, it is likely it would have done so with clarity. *Cf.* 11 U.S.C. §§ 348(f)(2) and 1306(a)(2). The reach of § 544(a)(2) ought not turn on whether the debtor receives or does not receive a discharge.

a limitation which obviously Congress would not have intended to be susceptible of evasion by calling the collection effort a garnishment instead of an attachment). A garnishee subjected to an attachment of wages is referred to as "the employer-garnishee." *See, e.g.,* D.C.Code Ann. § 16–572 ("where an attachment is levied upon wages due a judgment debtor from an employer-garnishee").

Finally, it makes no sense that § 16–579 is to be enforced via a motion served prior to attachment instead of incident to an answer to a writ of attachment. Controversies regarding writs of attachment are brought before the court when the garnishee chooses to dispute the attachment. *See* D.C.Code Ann. § 16–551:

> A garnishee or stranger to the action who may make claim to the property attached may file an answer defending against the attachment. The answer may be considered as raising an issue without any reply, and any issue of fact thereby made may be tried with a jury if any party so desires.

The stick for encouraging the filing of an answer (when the attachment is contested) is that the judgment creditor may serve interrogatories on the garnishee, and recover a judgment if no answer to the interrogatories is filed. D.C.Code Ann. § 16–556(b). When the interrogatories are answered, the judgment creditor "may traverse the answer as to the existence or amount of the property or credits, and the issue thereby made may be tried as provided by section 16–551." D.C.Code § 16–553. There is no evidence that Congress intended to bypass this procedure—of bringing disputes before the court via trial of answers filed in response to attachments—in the case of § 16–579.

■ So § 16–579 is dealing with, and is triggered by, attachments on employers to seize wages. The statute was not written as providing a remedy that could be invoked outside of the attachment process. In other words, creditors were not given the right to file an action—without having served a writ of attachment—seeking to hold an employer liable based on the value of services rendered for which the debtor-employee agreed not to be compensated.

## V

The debtor points to one limitation on attachment of wages: pre-judgment attachment is generally not permitted. D.C.Code Ann. § 16–583(a) provides, with exceptions of no relevance here, that "before entry of a judgment in an action against a debtor, the creditor may not obtain an interest in any property of the debtor by attachment, garnishment, or like proceedings." So at a minimum, Chase was precluded from seeking to attach wages until it recovered a judgment.

But § 16–583(a) does not answer what happens once a writ of attachment is served on the employer. The writ reaches backwards to seize any agreed compensation. But does § 16–579 reach backwards to entitle the judgment creditor to recover based on the debtor's having received inadequate compensation for services rendered prior to the service of the writ?

## VI

Several reasons compel the conclusion that § 16–579 likely does not apply to services rendered before service of the writ.[7]

### A.

■ Section 16–579 is a special provision directed at an attachment on wages which is frustrated by the debtor's agreeing to take inadequate compensation (or none at all) for the services an employee is

---

7. Although the trustee and the debtor did not initially advance this argument, the court felt compelled to address it because the issue might surface if the trustee attempted to sue Madison, and the issue is thus pertinent to evaluating the merits of the trustee's proposed settlement. The trustee and the debtor, not surprisingly, embraced the argument as supporting the approval of the settlement once the court brought it to their attention.

rendering to the employer. There is no indication that the provision is intended to improve the limited reach of a writ of attachment as to services predating the attachment.

Under D.C.Code § 16–572, an attachment on wages reaches only those wages "due or to become due to the judgment debtor," with the levy being "a continuing levy" until the judgment is paid. To the extent that bargained for wages **have** been paid, or the employee was working for no compensation, the writ reaches no pre-attachment wages. To the extent that bargained for pre-attachment wages have not been paid, the writ reaches those wages that are due. As far as the effectiveness of the writ as to past services is concerned, pre-attachment payment of the wages is no different from the debtor's having worked for no compensation: in either case, the employer holds nothing for the creditor to seize. The writ is no more frustrated when free services have been rendered than when salaried services have been paid.[8]

In contrast, post-attachment payment of wages to the employee offers no defense to compliance with the writ. Thus, as to post-attachment services, an arrangement to provide services for free does result in a frustration of the writ, a frustration which could not be accomplished by the employer's making payment to the employee. This contrast suggests that § 16–579's focus is on post-attachment services.

**8.** There is no evidence that Schneiderman's testimony that he and Madison agreed he would work for little compensation is fabricated. In other words, there is no reason to believe that to the contrary he was working for a higher amount of compensation and that Madison simply failed to pay him, such that Madison would be liable—based on unpaid agreed compensation—on a writ pursued by a hypothetical creditor.

**9.** Consider the case of an employee who earned unpaid pre-attachment wages that are barred by the statute of limitations. Those wages are not "due" if the employer raises the statute of limitations as barring any action

B.

Chase's interpretation of the statute would lead to absurd results.

First, as thus interpreted, § 16–579 would apply to services rendered so long ago that the employee would be barred by the statute of limitations from suing to recover compensation had the services been rendered for compensation, thus rendering § 16–579 a more potent tool than a writ of attachment on amounts owed for pre-attachment salaried services. Under D.C.Code Ann. § 12–301(7), an employer generally could successfully defend against a writ regarding salaried services rendered more than three years before service of the writ. But § 16–579 could be asserted as to free services rendered many years ago without any limitation (if § 16–579 reaches pre-attachment services and the § 16–579 remedy is pursued within three years after service of the writ).[9] Congress' failure to supply a statute limiting how far back § 16–579 could reach strongly suggests that Congress did not intend § 16–579 to reach pre-attachment services.

Second, in the case of services rendered for free, § 16–579 would plainly apply, without any necessity of showing fraud, to services rendered prior to the judgment debtor incurring any debt. This follows because § 16–579 applies, for example, "[w]here the judgment debtor is proved to be employed by a relative ... without salary ..."[10]

by the employee to collect the wages. The employer is liable on the attachment as to pre-attachment wages only if the employer "at the time is indebted for wages to [the] employee." D.C.Code Ann. § 16–573. The employer could assert the statute of limitations as barring any indebtedness.

But the § 16–579 remedy apparently could be asserted within three years after service of the writ, See D.C.Code Ann. § 12–301(8), and does not turn on the existence of an indebtedness.

**10.** Although § 16–579—by the use of the word "may"—vests the court with the discretionary power to decline to impose a payment

It is true that § 16–579 does contain the words "defraud or impede." But those words do not apply to the case of an employee working for free. Instead, they are employed in determining whether the statute applies when the employee is earning some salary: such an employee's services are subject to the statute if the compensation is "so inadequate as to satisfy the court that the salary or compensation is merely colorable and designed to defraud or impede the creditors of the debtor."

If § 16–579 is treated as applying only to post-attachment services, this explains why § 16–579 failed to impose the same "defraud or impede" limitation in the case of free services: once a writ is served and the judgment-debtor then renders her services for free, the judgment-creditor is necessarily being impeded and defrauded. In contrast, there is no explanation why, under Chase's interpretation of the statute, Congress would have omitted the requirement of fraud in the case of services rendered for free prior to any debt being incurred. This is evidence that § 16–579 was intended to apply only to post-attachment services.

### C.

Section 16–579 speaks in terms of the present. It applies only to a judgment debtor who "claims or is proved **to be** rendering services" without compensation (or at a compensation "so inadequate as to satisfy the court that the ... compensation **is** merely colorable")(emphasis added). It is unlikely that Congress would refer to a judgment debtor who many months ago rendered services without compensation as a judgment debtor who is shown **to be** rendering services without compensation. Similarly, it is unlikely that Congress would refer to a judgment debtor who many months ago rendered services for

fraudulently inadequate compensation as a judgment debtor who is shown **to be** rendering services for compensation so inadequate that the compensation **is** merely colorable. If Congress had intended § 16–579 to reach past services, it would likely have spoken in terms of both the present and the past (for example, by referring to the judgment debtor who "claims or is proved to be rendering or to have rendered services" without compensation).

Chase, however, emphasizes that § 16–579 empowers the court to direct the employer-garnishee to make payments "based upon a reasonable value of the services **rendered** by the judgment debtor under his employment or upon the debtor's then earning ability." (Emphasis added.) Chase elaborates that:

> a Court may direct the employer-garnishee to make payments on one of two bases. First, a Court may order payments based upon a reasonable value of the services rendered by the judgment Debtor under his employment, or, second, a Court may order payments based upon the Debtor's then earning ability. The first alternative focuses on what has already happened, *i.e.,* the benefits already accrued to the employer by virtue of the Debtor receiving salary so low as to defraud creditors, whereas the second option focuses on the potential to earn money prospectively. Therefore, a Court is empowered by the statute to order payment from the employer-garnishee based upon the reasonable value of all of the services "rendered" by the Debtor.

Chase's Second Supplemental Mem. at 2–3. This is a nice try, but the argument reads the word "rendered" with undue emphasis on its past tense and in isolation from the rest of the statute.

order against the employer, it is unlikely that Congress intended the courts to use that discretionary power to make policy decisions, tantamount to legislation, regarding when § 16–579 should not be enforced. The court

prefers instead to view the lack of any limitation in the statute as reflecting a Congressional view that the statute only applies to post-attachment services.

First, an employer ought not be required to make payments if the employee does not render services after service of a writ of attachment. It is thus natural for § 16–579 to limit payments to "services rendered," meaning those services already rendered after service of the writ and those that are rendered in the future. The use of the past tense "rendered" thus offers no support for Chase's interpretation of the statute.

Second, the argument interprets § 16–579 in isolation from the rest of the chapter in which it is contained. As already demonstrated in part III, a request for an order enforcing § 16–579 would occur only after service of a writ of attachment. So it is not surprising that the statute refers to the option of ordering payments based on the value of the services "rendered," meaning those services rendered between the service of the writ and the entry of the order.

Finally, the argument is made in isolation from the balance of § 16–579. The provision's reference to "services rendered" necessarily relates back to the provision's opening clause which limits the statute to services the judgment debtor "is proved to be rendering" without compensation or for inadequate compensation that "is" merely colorable.

### D.

As the debtor observes, the approach of § 16–579:

is in derogation of the historical rule that although a debtor may not give away his property to the prejudice of creditors, he may give away his services without compensation. 37 Am Jur 2d, Fraudulent Conveyances, § 60. Therefore, when a debtor performs services for his spouse without compensation, his creditors would have no claim against her or her assets for the value of those services. *King v. Voos*, 14 Ore. 91, 12 P. 281 (Ore.1886).

Debtor's Supplemental Mem. at 9–10 (footnote omitted). Because the statute abrogates the common law rule, it is important to pay close heed to the mechanism employed for implementing the remedy. Congress opted to limit the § 16–579 remedy by subjecting it to the procedures governing attachments. It did not write § 16–579 as a free-standing remedy that could be brought by an independent proceeding without reference to the attachment procedures. This suggests that Congress viewed the attachment as the signal event in the workings of § 16–579. The attachment alerts the employer that its employee is the subject of a judgment.

Prior to knowledge of any judgment, the employer may have gratefully accepted the free services for years without any warning that § 16–579 might be brought to bear. The writ of attachment alerts the employer that continued acceptance of services for free may not actually be for free. The employer is now well aware that its arrangement with the debtor will frustrate the creditor's collection efforts by depriving it of attachment payments that would be owed were the debtor receiving fair compensation. In that circumstance, the employer can be viewed as proceeding with the arrangement at its own risk that a statute may make it liable for imputed fair compensation. It is unlikely that Congress, without any express comment, intended § 16–579 to apply to an employer's receipt of services prior to the judgment-creditor's serving a writ of attachment.

### VII

Based on the foregoing, the court views the trustee's ability to recover against Madison as exceedingly slim. The court additionally views the trustee as facing potential delay and costs in litigation with Madison, risks of losing on other issues Madison would raise in the litigation, and potential difficulty in collecting from Madison. The settlement will essentially settle the § 16–579 claim for $137,500, a settlement that clearly is in the best interest of the estate.

## VIII

Chase objects that the trustee's proposed order granting his motion calls for the dismissal with prejudice of Chase's pending Garnishment Motion. Additionally, Chase objects that the Mutual General Release which the trustee and Madison would execute as part of the settlement purports to foreclose the ability of Chase and other creditors independently to pursue Madison under § 16–579 on account of postpetition wages. Chase urges that:

> Even though Chase may not pursue the Debtor himself for garnishment of such wages because of Debtor's discharge in bankruptcy, the statute allows Chase to pursue Madison in an effort to collect on its judgment against the debtor. Because there are post-petition wages that the Debtor has waived in favor of Madison, the claim for garnishment of such wages is not property of the estate and thus the Trustee has no right to release such claims. Rather, at most, the Trustee may only release any creditor's claims for garnishment of pre-petition wages.

Chase's Limited Objection to the Mutual General Release and Order of Court Proposed by the Trustee at 1–2.

■■■ For reasons already discussed in part III, above, the trustee has no right to step into the shoes of creditors and to assert any § 16–579 remedy of creditors with respect to postpetition services (and hence has no right to compromise claims regarding postpetition services). The debtor's discharge could potentially be re-

voked or certain creditors' claims might be nondischargeable under 11 U.S.C. § 523(a), thus permitting some or all creditors to pursue collection of their claims. So the trustee can release only those § 16–579 rights that the trustee is entitled to assert on behalf of the estate. Such a release does not release claims of creditors under § 16–579 that the trustee has no right to assert on behalf of creditors.

That is how the Mutual General Release is already written. It does not provide for a release by creditors of their claims, but only for the estate's release of *its* claims.[11] To the extent that the trustee has standing under § 544(a)(2) and § 544(b) to assert claims of creditors, the Mutual General Release will necessarily preclude assertion of such claims by creditors. But remember that § 544(a)(2) and § 544(b) operate at the petition date, not prospectively. *See* part III, above. So rights of creditors as to postpetition services Schneiderman renders to Madison are unaffected by the Mutual General Release.

■■■ However, Chase's claim has been discharged without its timely seeking a determination of nondischargeability or timely obtaining an agreement reaffirming the debt. *See* 11 U.S.C. §§ 523(c) and 524(c)(1). The debtor's discharge voided Chase's judgment (11 U.S.C. § 524(a)(1)) and enjoins continuation of its employment of process to collect the debt (11 U.S.C. § 524(a)(2)). Chase is thus precluded from obtaining the issuance of a writ of attachment, the predicate to pursuing § 16–579 relief.[12] Chase's contention that

---

11. The Mutual General Release provides that: **the Trustee** for himself, the Estate, ... and anyone claiming through or under it or on its behalf, hereby ... **releases** ... **all claims** of whatever nature ... **against Madison** ... for all claims including, but not limited to the Chase Action, and the payment of any and all wages, salaries, and other monies and other benefits allegedly due and owing the Debtor and/or the Estate[.]
[Emphasis added.]

12. Had Chase recovered a § 16–579 order prepetition requiring Madison to pay over an

imputed fair compensation for underpayment of *prepetition* services, and the trustee could not avoid the recovery (or the attachment giving rise to the recovery) as a preference or otherwise, then the discharge injunction would arguably not apply. Chase's recovery would be tantamount to a non-avoidable prepetition attachment of wages actually owed. As the creditor first in time to serve a writ on Madison and to recover an order against Madison, Chase arguably would take priority over any other creditor, including the trustee as a hypothetical creditor under § 544(a)(2), attempting to recover under § 16–579. But

it seeks only to recover from Madison's own property and not the debtor's disregards the fact that § 16–579 is intended to protect against frustration of the attachment remedy. The debtor's discharge bars Chase from collecting the debt via attachment, and the § 16–579 remedy designed to protect against frustration of that attachment remedy thus does not apply.

The cases relied upon by Chase in contending that the discharge does not bar its collecting from Madison as to Schneiderman's postpetition services are distinguishable from the circumstances of this case. For example, in *In re Sowers,* 164 B.R. 256 (Bankr.E.D.Va.1994), a judgment was entered prepetition against the debtor's employer due to the employer's failure to respond to a garnishment summons. The court determined that the creditor's attempt to satisfy the judgment obtained against the employer was not a violation of the automatic stay because "it was this corporate liability which the defendants were trying to collect after the debtor's petition was filed" and not the debt owed by the debtor. *Id.* at 259. Unlike *Sowers,* in this case, Chase did not obtain a prepetition judgment against Madison for failure to respond to Chase's Garnishment Motion such that Madison would now owe a corporate debt separate and apart from the judgment debt owed by the debtor.

More importantly, in *Sowers,* the debtor's services that gave rise to the garnishment judgment against the employer were all rendered prepetition. Chase improperly seeks to pursue collection of its judgment against Schneiderman via employer liability of Madison arising out of postpetition services. Chase incorrectly contends that it is merely pursuing a separate claim (or, as described in *Sowers,* "corporate liability") against Madison because Madison is independently liable to it under § 16–579. As discussed above, § 16–579 is not an independent cause of action, rather, the liability of Madison under § 16–579 is predicated upon the existence of the judgment against the debtor. Because the judgment against the debtor was extinguished by virtue of his discharge, there is currently no debt upon which to base a § 16–579 garnishment proceeding.[13]

The debtor has been a party to this proceeding and, having bargained for release of the trustee's claims under § 16–579 and as one affected by any postpetition garnishment on his employer, has standing to obtain a determination that the Garnishment Motion is barred by the settlement agreement and by the discharge injunction which Chase concedes applies to it. By contending that the discharge does not bar pursuit of the Garnishment Motion as to postpetition wages, without insisting on an adversary proceeding to address the issue, Chase has opened the door for the court to decide whether the court should compel Chase to dismiss the Garnishment Motion. The pending Garnishment Motion should be withdrawn without prejudice to Chase's

Chase did not recover a § 16–579 order or even secure the issuance of a writ. It thus cannot displace the trustee's right to assert and compromise creditors' claims against Madison under § 16–579 with respect to prepetition services. *Cf. In re J. Robert Pierson, Inc.,* 44 B.R. 556, 558 (E.D.Pa.1984)(creditor failed to take necessary steps to perfect attachment lien and thus to defeat trustee's rights under § 544(a)).

Had Chase recovered a § 16–579 order applicable to future services, it stands to reason that the intervention of bankruptcy would bar enforcement of the § 16–579 order as to any *postpetition* services. The debtor is free to work postpetition for a salary without those

creditors holding discharged claims being able to reach the salary. Those creditors ought not be able to collect from the employer an imputed wage they would have been unable to collect from the debtor had he been taking a wage.

13. Likewise, Chases' reliance upon the cases of *American General Finance v. United Ready Mix, Inc.,* 70 Ohio App.3d 195, 590 N.E.2d 867 (1990); *In re Gray,* 97 B.R. 930, 935 (Bankr.N.D.Ill.1989); and *United Guaranty Residential Ins. Co. v. Dimmick,* 916 P.2d 638, 640 (Colo.Ct.App.1996) (cases factually similar to *Sowers*) is misplaced for the reasons stated above.

pursuing relief under § 16–579 in the event that the debtor's discharge is revoked or in the event that Chase's claim is nondischargeable. The court will thus direct Chase to seek to withdraw the Garnishment Motion on those terms.

An order follows.