In re Christopher Logan KANIPE and Ricki Cross Kanipe, Debtors.

Christopher Logan Kanipe and Ricki Cross Kanipe, Plaintiffs,

v.

First Tennessee Bank, Defendant.

Bankruptcy No. 01–21726.
Adversary No. 02–2014.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 16, 2002.

William K. Rogers, Esq., Kingsport, TN, for Christopher and Ricki Kanipe.

Frederick L. Conrad, Jr., Esq., Knoxville, TN, for First Tennessee Bank.

## MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the chapter 7 debtors seek a judgment for the defendant's alleged violation of the discharge injunction due to the defendant's postdischarge execution on the debtors' bank account and the prosecution of a conditional judgment pursuant to TENN. CODE ANN. § 29-7-114. Presently before the court is the defendant's motion for summary judgment based on its assertion there are no disputed facts and it is entitled to judgment as a matter of law. For the reasons addressed below, the motion will be granted. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(O).

I.

The debtors Christopher Logan Kanipe and Ricki Cross Kanipe filed for chapter 7 relief on May 11, 2001, and received a discharge on August 20, 2001. According to the complaint filed by the debtors on February 25, 2002, commencing this adversary proceeding, the defendant First Tennessee Bank held a prepetition judgment against the debtor in the amount of $7,800. The complaint recites that "First Tennessee was listed and provided notice of the Chapter 7 Bankruptcy at its address of First Tennessee Bank, Post Office Box 8, Memphis, Tennessee 38101." The debtors allege that notwithstanding this notice and the bankruptcy discharge, First Tennessee, through its attorney, Frederick L. Conrad, Jr., had "$754 taken out of the debtors' checking account at First Vantage Bank" on or about December 24, 2001. The debtors also allege that on or about

January 2, 2002, First Tennessee filed a conditional judgment in the General Sessions Court for Sullivan County, Tennessee against the debtor Ricki Cross Kanipe and her employer Admiral Propane, LLC concerning First Tennessee's prepetition, failed attempt to garnish Mrs. Kanipe's wages. The debtors contend that these actions violate the automatic stay provision of 11 U.S.C. § 362(a) and therefore they are entitled to a judgment against First Tennessee under § 362(h) for the damages sustained by them, including attorney fees and expenses.

In its answer, First Tennessee admits that it had a prepetition judgment in the amount of $7,838.83 against debtor Ricki Kanipe. First Tennessee further admits that it was scheduled as a creditor by the debtors but denies that it received notice of the bankruptcy filing. First Tennessee concedes that its attorney, Frederick L. Conrad, Jr., levied on the debtors' bank account in December 2001 and that in response to this levy, an employee of debtors' attorney telephoned Mr. Conrad and advised him of the bankruptcy filing. The answer recites that upon receipt of this information, Mr. Conrad immediately faxed and mailed a letter to the Sullivan County General Sessions Court advising it to stop the levy and that as a result, First Tennessee never received any money from the levy. First Tennessee contends that based on the foregoing any stay violation was inadvertent.

With respect to the allegations regarding the conditional judgment, First Tennessee states in its answer that this was issued against Admiral Propane only and concerned Admiral Propane's liability under TENN. CODE ANN. § 29–7–114 as Ricki Kanipe's employer for failure to timely answer a prepetition garnishment against Ricki Kanipe's wages. Accordingly, First Tennessee asserts that because the action was not brought against debtor Ricki Kanipe, it is independent of the debtors' discharge.

On August 12, 2002, First Tennessee filed a motion for summary judgment supported by debtor Ricki Kanipe's answers to the defendant's request for admissions and the affidavits of attorney Frederick L. Conrad, Jr.; M.E. Parker, United States Postmaster; and Charles Valentine, recovery specialist for First Tennessee. Contemporaneously with the filing of the motion, First Tennessee filed a "Statement Of Material Facts As To Which There Is No Genuine Issue."

Mr. Valentine states in his affidavit that as a recovery specialist for First Tennessee Bank, he is "custodian of records regarding the indebtedness of Ricki Cross Kanipe" and "[t]here is no record that Ricki Cross Kanipe's bankruptcy notice was received prior to December 28, 2001." Mr. Parker states in his affidavit that "[t]he records of the United States Postal Service show that the box holder for the address of Post Office Box 8, Memphis, Tennessee 38101 is not currently First Tennessee Bank" and that "[t]he records of this office show that the box holder of Post Office Box 8, Memphis, Tennessee 38101 was not First Tennessee Bank on May 11, 2001, or anytime thereafter up to the date of this affidavit." Attachments to the affidavit indicate that First Tennessee's post office box is 84, and that box 8 is assigned to Jubilee's Ministry. Mr. Conrad states in his affidavit that "[t]he first notice of debtor's bankruptcy filing received by my office was on December 28, 2001 when Amy Murdock called our office and advised of same"; that "[u]pon notice of the bankruptcy filing, my office took immediate steps to stop the bank levy and have the funds returned to the Plaintiff by immediately contacting the Court by letter via facsimile and mail"; and that "[u]pon

notice of the bankruptcy filing, we have undertaken no further actions against the debtors to collect this debt."

On August 30, 2002, the debtors filed a response to the motion for summary judgment along with an affidavit of debtor Ricki Kanipe and the debtors' own "Statement Of Material Facts." Mrs. Kanipe states in her affidavit that "[p]rior to filing my Chapter 7 Bankruptcy I received Credit Reports which listed the address for First Tennessee Bank as being Post Office Box 8, Memphis, Tennessee 38101. I provided this information to my attorney, William K. Rogers, and this address was listed in my Bankruptcy Petition." Regarding the garnishment on the debtors' bank account, Mrs. Kanipe concedes that the garnished funds were replaced in the account by First Tennessee, but notes that "[b]ecause of the garnishment I had garnishment fees, overdraft charges and returned check fees of $297.50," which have not been reimbursed. Mrs. Kanipe states that the conditional judgment was against both her and her employer and attaches a copy to the affidavit.

In their response, the debtors state that Mrs. Kanipe's affidavit establishes there are material facts in dispute. The debtors assert that whether the defendant listed the wrong address in the bankruptcy petition is immaterial because First Tennessee's attorney admittedly received notice on December 28, 2001, before initiation of the conditional judgment action.

## II.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr.P. 7056, mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir.2001)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact and from which the court could reasonably find for the nonmovant. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986)). In other words, a nonmoving party has the affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Id.* See also *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989).

## III.

■ Although the debtors allege that First Tennessee's actions violated the automatic stay provisions of § 362(a) of the Bankruptcy Code, both the garnishment and the filing of the conditional judgment occurred after the debtors were granted a discharge, when the automatic stay was no longer in place. See 11 § 362(c)(2)(C). "Section 524(a) * was enacted to continue

---

* 11 U.S.C. 524(a)(2) provides that a discharge

in a bankruptcy case "operates as an injunc-

post-discharge the temporary stay imposed by § 362 when a case is commenced. It replaces the automatic stay with a permanent injunction against enforcement of all discharged debts upon entry of the discharge." *Waswick v. Stutsman County Bank (In re Waswick)*, 212 B.R. 350, 352 (Bankr.D.N.D.1997).

■ Unlike § 362 which provides a remedy for violations of the automatic stay in subsection (h), § 524 contains no specific remedy for violations of the discharge injunction. The Sixth Circuit Court of Appeals has held that there is no private right of action for breaches of § 524; instead "the traditional remedy for violation of an injunction lies in contempt proceedings ...." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir.2000). In determining whether a creditor's actions in connection with the discharge injunction are contemptuous, several courts have utilized the standard routinely followed for violations of the automatic stay. *See, e.g., Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir.1996); *In re Pincombe*, 256 B.R. 774, 783 (Bankr. N.D.Ill.2000); *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 187 (Bankr.E.D.Va. 2000). Under § 362(h), damages may be awarded when an individual is injured by a willful violation of the automatic stay. "The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing." *In re Timbs*, 178 B.R. 989, 997 (Bankr. E.D.Tenn.1994). Accordingly, the court must determine if First Tennessee had knowledge of the debtors' bankruptcy when it commenced its postdischarge collection efforts.

Although undisputedly First Tennessee was scheduled as a creditor by the debt-

ors, First Tennessee contends that the address listed by the debtors was incorrect and that it never received written notice of the debtors' bankruptcy filing. The affidavits submitted by First Tennessee establish that First Tennessee rents post office box 84 and that it neither currently nor at the time of the bankruptcy filing utilized box 8, the address listed by the debtors. In its answers to the debtors' first set of interrogatories, First Tennessee states that it "was unable to find that P.O. Box 8 Memphis, Tennessee 38101 was ever used by First Tennessee Bank." Mrs. Kanipe's affidavit does not directly refute these assertions, but only recites that she obtained the "Post Office Box 8, Memphis, Tennessee 38101" address from credit reports. There is no other indication that First Tennessee had actual knowledge of the debtors' bankruptcy filing when it executed upon the debtors' bank account in December 2001.

■ When a debtor schedules an incorrect address for the creditor, the court must ascertain:

if the address provided by the debtor is sufficiently accurate to permit delivery by the United States Postal Service to the appropriate party. Where a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold. [Citations omitted.] If the creditor is able to show that the address was inadequate for the purpose intended, the burden then shifts to the debtor to show that, notwithstanding the incorrect address, the "creditor had notice or actual

tion against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any

such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

knowledge of the case." [Citations omitted.]

*Oxford Video, Inc. v. Walker (In re Walker)*, 125 B.R. 177, 180 (Bankr.E.D.Mich. 1990).

■ In the present case, the wrong post office box number rendered it unlikely that the bankruptcy notice would have been actually received by First Tennessee. And, in light of the affidavits of First Tennessee and its attorney that it had no notice of the bankruptcy, and the absence of evidence from the debtors that First Tennessee had actual notice of the bankruptcy filing, the court must conclude that First Tennessee did not have knowledge of the debtors' bankruptcy case at the time its attorney levied upon the debtors' bank account in December 2001. As such, although a violation of the discharge injunction occurred, the violation was not willful and therefore not contemptuous. *Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 875 (Bankr.E.D.Tenn.2000)("A violation of the automatic stay which occurs without knowledge of a pending bankruptcy case does not constitute a willful violation which will subject a creditor to sanctions under § 362(h).").

■ Of course, "[w]hen a creditor receives . . . actual notice of a pending bankruptcy case, the burden is then on the creditor to assure that the automatic stay is not violated or, if it has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay." *Id.* The "failure to take affirmative action to undo an innocent violation of the automatic stay may constitute a willful violation." *Id.*

■ Although in the present case First Tennessee took appropriate action by immediately releasing the garnishment upon notice of the debtors' bankruptcy

discharge, the debtors request consequential damages caused by the garnishment in the nature of overdraft bank charges and other fees as well as an award of their attorney's fees. The court, however, finds no basis for an award of such damages. Section 362(h) requires a showing of willfulness in order to recover actual damages for a violation of the automatic stay. Furthermore, as a general rule, in order to sanction a party for civil contempt, it must be established that the party "violated a definite and specific order of the court requiring [the party] to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir.1996). Application of this standard to the bankruptcy context dictates that prior knowledge of the bankruptcy is a prerequisite to the imposition of civil contempt sanctions.

■ The debtors' second cause of action in this adversary proceeding is based on First Tennessee's prosecution of the conditional judgment. It appears that prior to the debtors' bankruptcy filing on May 11, 2001, in order to collect its prepetition judgment against debtor Ricki Kanipe, First Tennessee had the General Sessions Court for Sullivan County, Tennessee issue a garnishment upon Mrs. Kanipe's employer, Admiral Propane, on March 22, 2001. The garnishment directed Admiral Propane to answer by April 27, 2001, whether it owed any wages to Mrs. Kanipe. Counsel for the debtors advised Admiral Propane in a letter dated March 13, 2001, that "we are in the process of filing a Bankruptcy Petition for Ricki Kanipe." Regardless of whether this letter was the cause, Admiral Propane failed to answer the garnishment. As a result, First Tennessee requested and was granted on January 3, 2002, a conditional judgment against Admiral Propane in the amount of

$8,545.46 due to its failure to answer the garnishment. The conditional judgment stated that it would become final if Admiral Propane failed to show good cause otherwise on or before March 11, 2002. From what this court can glean, the general sessions court refused to make the conditional judgment final and First Tennessee then appealed the ruling to the circuit court where it is still pending.

In the complaint, the debtors assert that these actions by First Tennessee violated 11 U.S.C. § 362(a) and request this court to order First Tennessee to cease prosecution of the conditional judgment. First Tennessee's response is that the failure of the employer to timely answer the garnishment established separate liability of the employer pursuant to Tenn. Code Ann. § 29–7–114 and that "it is entirely proper for the Defendant to seek payment from what has in essence become a non discharged co-debtor on the account."

There is no dispute that First Tennessee knew of the debtors' bankruptcy filing and discharge at the time the conditional judgment was obtained. The critical question is whether First Tennessee's actions in this regard violated the discharge injunction. In order to address this issue, it is first necessary to examine the Tennessee statutory scheme dealing with garnishments and the potential liability of an employer as garnishee.

Tenn. Code Ann. § 26–2–209 provides in part that:

> If the garnishee fails to appear or answer, a conditional judgment may be entered against the garnishee for the plaintiff's debt, upon which a notice shall issue to the garnishee returnable at such time as the court may require, to show cause why judgment final should not be rendered against him. On failure of the garnishee to appear and show cause, the conditional judgment shall be made fi-

nal, and execution awarded for the plaintiff's entire debt and costs.

Tenn. Code Ann. §§ 29–7–114, 115, and 116 provide as follows:

> If, when duly summoned, the garnishee fail to appear and answer the garnishment, he shall be presumed to be indebted to the defendant to the full amount of the plaintiff's demand, and a conditional judgment shall be entered up against the garnishee accordingly. Tenn. Code Ann. § 29–7–114.

> Upon this conditional judgment, a scire facias shall issue to the garnishee, returnable to the next term of the court, or to a day and place fixed before a general sessions judge, to show cause why final judgment should not be entered against him. Tenn. Code Ann. § 29–7–115.

> Upon the return of this scire facias duly served, or two (2) returns of "not to be found in my county," the conditional judgment shall be made final, and execution issued accordingly. Tenn. Code Ann. § 29–7–116.

As explained by the Tennessee Court of Appeals:

> Where no answer is made by the garnishee, the statutory remedy is by "conditional judgment"....

> ....

> The conditional judgment is a notification to the garnishee that if he does not make timely answer, the Court will presume that he (the garnishee) is indebted to the judgment [debtor] in an amount sufficient to satisfy the judgment.

> ....

> The purpose of a conditional judgment against a garnishee is to give the garnishee, who has defaulted additional time or another opportunity to answer the garnishment....

A conditional judgment against a garnishee is not a final adjudication of the respective rights of the plaintiff and garnishee, but is a proposed or threatened judgment to be actually imposed if the garnishee does not "show cause" in response to the scire facias.

The office of the scire facias is to notify the garnishee of the necessity to appear on a date and at a time certain to show cause why the conditional judgment should not be made final.

Upon proper response to the scire facias with full disclosure of the indebtedness of the garnishee to the judgment debtor, the garnishee has "shown cause" why the conditional judgment for the entire judgment debt should not be made final. Such showing having been made, it is the duty of the court to set aside the conditional judgment or to modify it to conform to the facts as disclosed by the answer of the garnishee and any other evidence presented; that is, the court should render final judgment only for the amount admitted by the garnishee to be due the debtor, or the amount shown by other evidence to be due.

*Meadows v. Meadows,* 1988 WL 116382 (Tenn.App. Nov.2, 1988).

When confronted with the issue before this court, whether a judgment creditor's postpetition acts against a debtor's employer for failure to honor a prepetition garnishment violated the discharge injunction (or automatic stay), the courts have disagreed. The majority conclude that no violation has occurred because the actions are against the employer solely based on its failure to comply with the wage deduction statutes and do not involve the debtor or property of the estate. *See In re Schneiderman,* 254 B.R. 296 (Bankr.D.D.C.2000)(dicta); *In re Sowers,* 164 B.R. 256 (Bankr.E.D.Va.1994); *In re*

*Waltjen,* 150 B.R. 419 (Bankr.N.D.Ill. 1993); *In re Gray,* 97 B.R. 930 (Bankr. N.D.Ill.1989); *United Guar. Residential Ins. Co. v. Dimmick,* 916 P.2d 638 (Colo. Ct.App.1996). A minority of courts disagree, viewing the process as "simply an indirect proceeding or act to collect, assess, and recover a claim against the debtor." *See O'Connor v. Methodist Hosp. of Jonesboro, Inc. (In re O'Connor),* 42 B.R. 390, 392 (Bankr.E.D.Ark.1984). *See also Univ. of Alabama Hosps. v. Warren (Matter of Warren),* 7 B.R. 201, 205 (Bankr.N.D.Ala.1980)(allowing the creditor to proceed against the debtor's employer will undoubtedly "indirectly affect the debtor's job and future earnings and his right to earn" which is "in direct contravention of the 'fresh start' provided by the Federal Bankruptcy Code"). *Cf. Ganz v. Griffith,* 1996 WL 122184 (E.D.Pa. Mar.19, 1996)(court refused to allow postpetition action against garnishee as rights of garnishor in property being attached were not established at time of bankruptcy filing).

After much deliberation, this court concludes that the majority position on this issue is the correct one. Notwithstanding the debtors' contention to the contrary, the prosecution of the conditional judgment was against the employer solely pursuant to TENN. CODE ANN. § 29–7–114 due to its failure to answer or otherwise respond to the garnishment. The fact that Mrs. Kanipe's name is listed in the caption of the conditional judgment as a defendant is inconsequential; the body of the order clearly reflects that First Tennessee had moved for a conditional judgment against Admiral Propane, that Admiral Propane had failed to answer the garnishment, and that therefore a conditional judgment was being entered against Admiral Propane, the defendant-garnishee, in favor of First Tennessee. As stated by the court in *In re Sowers:*

When [the employer] failed to take any action in response to the garnishment summons, the $475.33 that was supposed to be garnished from [the debtor's] wages became a corporate liability. It was this corporate liability which the defendants were trying to collect after the debtor's petition was filed, not the debt owed by [the debtor]. This interpretation is supported by *Lynch v. Johnson*, 196 Va. 516, 84 S.E.2d 419 (1954) which stated: "The word 'garnishment' is derived from the Norman French Word 'garnir,' meaning to warn. (citations omitted). Thus, a summons of garnishment under our statutes is a warning to the garnishee not to pay the money or deliver the property of the judgment debtor in his hands, upon penalty that if he does *he may subject himself to personal judgment.*"

*In re Sowers*, 164 B.R. at 259 (quoting *Lynch v. Johnson*, 84 S.E.2d at 421 (emphasis in original)). Similarly, the court in *In re Gray* concluded that "[t]he long and the short of this case is that no property of the estate or Debtor is involved here, and the outcome does not directly or indirectly affect this case or the Debtor's moneys or his discharge rights." *In re Gray*, 97 B.R. at 937.

■ This court is somewhat concerned that the ruling in this case could subject Mrs. Kanipe to pressure from her employer to repay its loss or run the risk of being discharged from her employment, although no allegations of such possible threats were raised in the complaint. *See In re Sowers*, 164 B.R. at 259; *In re Gray*, 97 B.R. at 936 (both courts similarly noting the absence of such allegations). While such threats are more likely to be implied rather than explicit, any employer who sustains corporate liability under the garnishment statutes should tread lightly before seeking indemnification from the debtor as the employer itself could be in violation of the discharge injunction. Moreover, under the Consumer Credit Protection Act, an employer is prohibited from discharging "any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." 15 U.S.C. § 1674(a). *Cf. In re Sowers*, 164 B.R. at 260 n. 4 (noting similar prohibition under Virginia statute).

■ Even with the potential backlash against debtor Ricki Kanipe, however, this court's ruling is the correct one. Under 11 U.S.C. § 524(e), the discharge of a debt of the debtor does not affect the liability of any other entity on such debt. *See Dimmick*, 916 P.2d at 640. Furthermore, the situation presented by this case could have been prevented if Admiral Propane had simply fulfilled its statutory duty by responding to the garnishment. Its failure to do so placed it potentially liable to First Tennessee. Because this was the liability upon which First Tennessee was seeking to recover when it prosecuted the conditional judgment, rather than its prepetition claim against debtor Ricki Kanipe, its actions in this regard did not violate the discharge injunction.

## IV.

An order will be entered in accordance with this memorandum opinion granting First Tennessee's motion for summary judgment.