**In re Rafael F. DIAZ RODRIGUEZ, Debtor.**

**Rafael F. Diaz Rodriguez, Plaintiff,**

v.

**Olympic Mortgage Corp. and Hector Gascot, Defendants.**

Bankruptcy No. 02–03327 (GAC).
Adversary No. 02–00118.

United States Bankruptcy Court, D. Puerto Rico.

Aug. 14, 2006.

Modesto Bigas Mendez, Ponce, PR, for Debtor.

## DECISION AND ORDER

GERARDO A. CARLO–ALTIERI, Chief Judge.

### I. *Procedural and Factual Background*

Pending before the Court is a Motion for Summary Judgment filed by Olympic Mortgage Corporation ("Olympic") and Hector Gascot ("Gascot")(collectively, "Defendants") and an Answer and Cross–Motion for Summary Judgment filed by debt-or, Rafael F. Diaz Rodriguez ("Diaz"). On March 28, 2002, Diaz filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Docket # 1, legal case). On April 1, 2002, the Court issued a Notice of the Chapter 7 Bankruptcy Case, meeting of Creditors and other Deadlines (Docket # 2, legal case). The Meeting of Creditors was scheduled for May 1, 2002 and the deadline for filing a complaint objecting to Diaz's discharge or to determine the dischargeability of certain debts was set for July 1, 2002. The notice stated that parties do not need to file a proof of claim unless they received notice to do so.

The address upon which Olympic was served with the Notice of the Chapter 7 Bankruptcy Case was "Banco Popular de P.R., Olympic Mortgage, P.O. Box 70354, San Juan, P.R. 00936" (Docket # 3, Certificate of Mailing in legal case). In Diaz's schedules, it provided that Olympic held an unsecured claim totaling $51,017.25.

Trustee filed a report after the meeting of creditors that the case would be closed as a no asset (Docket # 5, legal case) and afterward filed a report of no distribution (Docket # 7, legal case). No objections were filed to Trustee's report of no distribution and Diaz's discharge was entered on July 10, 2002 (Docket # 13, legal case).

On September 11, 2002, Diaz filed the instant adversary proceeding to obtain an injunction and other remedies against Olympic, Gascot and others. The complaint was subsequently dismissed as to all defendants except Olympic and Gascot. Diaz argues that on or about July 1, 2002, Gascot, acting on behalf of Olympic, appeared at the offices of Med Plus Health Plan Administration and demanded that any amounts owed to Diaz be disbursed to him. Moreover, Diaz avers that Gascot misrepresented that he was an officer of the Superior Court of Puerto Rico.

Diaz further states that even after his discharge was entered on July 10, 2002, Gascot, acting on behalf of Olympic, and again misrepresenting that he was an officer of the Superior Court, with legal authority to make such collection actions, continued to demand from other medical providers that they surrender to him all amounts owed and pending disbursement for dental services rendered.

Diaz argues that Defendants' actions constitute a willful violation of the automatic stay pursuant to 11 U.S.C. § 362(h) and subsequent to discharge, a violation of the discharge injunction provided by 11 U.S.C. § 524. Diaz requests compensatory damages, punitive damages and attorney's fees. Furthermore, Diaz requests that the Court issue a permanent injunction prohibiting and permanently restraining Defendants from continuing their collection efforts from his current assets, including any post petition fees due for professional services rendered.

On October 2, 2002, Defendants file an Answer to Complaint (Docket # 5), asserting that they became aware of Diaz's petition for bankruptcy with the filing of the present complaint. They assert that they did not oppose Diaz's discharge because he did not notify them of the bankruptcy filing. Defendants further assert that although the debt was listed in the schedules, Diaz deliberately provided a wrong address with the intention of not allowing them to appear before the Court. Gascot contends that when he made the collection efforts he did not misrepresent himself as an officer of the Court.

Defendants further contend that although Diaz's schedules represent the case as a no-asset, these are not the facts. Among other things, Defendants assert that debtor lists no real property, but allege that Diaz has an economic society with Deborah Caraballo Rosa ("Caraballo"), with whom he has been living for the last nine years. They assert that Caraballo and Diaz are stockholders of a company called Med Tech, Inc. They also assert that she was his secretary and that she bought a house for $219,700.00 and a second for $312,000.00. Moreover, Schedule J lists an expense of $150.00 for auto insurance and there is no auto scheduled. An expense of $150.00 also appears for house insurance and there is no property scheduled. Diaz lists a debt for child support for $2,000.00 (per month), owed to Melba Torres for two children and no amount is provided for Caraballo, with whom the Defendants allege, he has three children.

Defendants request that the Court dismiss the complaint, deny Diaz's discharge, order the continuance of the proceedings, reopen the case and, if proper, determine whether there have been violations under 18 U.S.C. § 152 and 28 U.S.C. § 1746, as they contend that Diaz knowingly made false oaths or accounts in or in relation to, a case under 18 U.S.C. § 1621.

On July 15, 2004, Defendants filed a Motion for Summary Judgment (Docket # 60), arguing they were not properly notified of Diaz's Chapter 7 bankruptcy filing. Defendants contend that Diaz knowingly served the Notice of Filing to the wrong address. Thus, Defendants claim that they were denied their right to examine Diaz at the Section 341 Meeting of Creditors, their right to challenge Diaz's claims of exemption and most importantly, their right to challenge Diaz's discharge pursuant to 11 U.S.C. § 727.

Defendants contend that both the Chapter 7 petition and this adversary complaint were filed in bad faith and with intent to defraud creditors. They assert that they bought a judgment against Diaz in favor of Banco Popular de Puerto Rico ("Banco Popular") and that they notified Diaz of this. Defendants further state that local

court officers and Gascot proceeded according to law for the garnishment of monies in possession of health insurance companies, according to the judgment entered by the local court. Moreover, Defendants aver that although Diaz filed the bankruptcy case as a Chapter 7, the facts do not support such a filing. Specifically, Defendants reiterate that Diaz and his secretary, Caraballo, although not married, have lived together for nine years and have three children, thus establishing an "economic society." Furthermore, Defendants assert that Diaz and Caraballo were stockholders in a company called Med Tech. Defendants request that this Court reopen the bankruptcy case, that the discharge be overruled and denied, that the matter be referred to the U.S. District Attorney and any other remedies supported by law, including reasonable fees, expenses and costs.

On October 28, 2004, Diaz filed an Answer and Cross–Motion for Summary Judgment, arguing that Defendants knew or should have known that the stay was in effect (Docket # 64). Diaz states that Banco Popular obtained a pre-petition judgment against Med Tech and Diaz as the loan guarantor from the Superior Court of Ponce, for a total amount of $51,017.25 in case no. JCD96–0299. The Judgment was subsequently sold to Olympic, but Diaz asserts that he never received notice of the transfer because it was mailed to Med Tech, Inc., at an address where Diaz had not resided since December 1999, when he moved to Ponce. Notwithstanding his claim that he did not receive notice of the sale of the credit, Diaz sent notice of the bankruptcy filing to "Banco Popular de P.R., Olympic Mortgage, P.O. Box 70354, San Juan, P.R. 00936." Diaz claims that this was the only address known to him. Diaz admitted in the answer to the motion for summary judgment that Olympic "may have not received notice of the filing caused by debtor's ignoring the correct mailing address." Nonetheless, he argues that the mistake was caused by Olympic and that the Defendants had sufficient time to request permission to file a late claim.

As to the other allegations made by Defendants, Diaz argues that there is no proof of bad faith or fraud as to any creditor, that Defendants never lost their right to challenge the discharge and that they have made no efforts to examine Diaz under Rule 2002. Furthermore, Diaz negates that he has an economic society with Caraballo, asserting that he has no relation or connection with her economic activities and that she has never been employed as his secretary. Diaz also offers explanations for discrepancies in his schedules.

Finally, Diaz asserts that the burden of proof in objecting to the debtor's discharge, granted under § 727, is by a preponderance of evidence and Defendants have not met that burden. He further argues that the alleged facts proposed by Defendants in support of their motion for summary judgment regarding Caraballo, his employees and business are false. Thus, Defendants are not entitled to judgment as a matter of law.

On November 10, 2004, Defendants filed a reply to Diaz's Answer and Cross-motion for Summary Judgment (Docket # 65), stating that Diaz accepts the fact that Olympic obtained a pre-petition judgment against Diaz from Banco Popular. Defendants maintain that although Olympic is not a collection agency, this does not preclude them from collecting monies owed to them. Finally, they point out that Diaz, in his motion, accepts the allegations of irregularities in the notification, his schedules and the procedures followed in this case. Defendants requested a hearing to discuss the motions, but thereafter, on August 25,

2005, Defendants and Diaz filed a Joint Motion Requesting Remedies (Docket # 74), indicating that they submit the matters pending on the pleadings.

## II. *Discussion*

### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c) made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(b); *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrate that there is no genuine issue of material fact. *In re Edgardo Ryan Rijos v. Banco Bilbao Vizcaya & Citibank (In re Rijos)*, 263 B.R. 382, 388 (1st Cir. BAP 2001). Once the movant makes a prima facie showing that there are no genuine issues of material fact, the burden of proof shifts to the party opposing the motion for summary judgment to establish that there are questions of fact. 10 *Collier on Bankruptcy*, ¶ 7056.05, p. 7056–7 (15th ed.2005). The Court must view the evidence in the light most favorable to the nonmoving party. *In re Rijos*, 263 B.R. 382, at 388. Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Id.*

### B. *The Automatic Stay*

The automatic stay provision is one of the fundamental debtor protections provided by the Bankruptcy Code. The automatic stay provision specifically outlines those acts which are prohibited, including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

#### 1. *Willful Violation*

■ Although the Bankruptcy Code does not define the term "willful," the United States Court of Appeals for the First Circuit has held that a creditor willfully violates the automatic stay if it: (1) has notice of the automatic stay, and (2) the act or acts of the defendant were intentional. *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999). The first question before the Court is whether the Defendants had actual notice of the automatic stay at the time of the filing of the petition.

■ There can be no violation of the automatic stay if creditor was not given actual notice of the filing of the petition. *Id.* Debtor has the burden of providing the creditor with actual notice. The burden then shifts to the creditor to prevent violations of the automatic stay. *Id.* at 270. In the present case, Defendants challenge the accuracy of the address listed in the schedules, contending that they were not properly notified.

On facts similar to those now before us, the Court in *In re Kanipe*, 293 B.R. 750 (Bankr.E.D.Tenn.2002), held that:

[w]here a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold. If the creditor is able

to show that the address was inadequate for the purpose intended, the burden shifts to the debtor to show that, notwithstanding the incorrect address "the creditor has notice or actual knowledge of the case."

*Id.* at 755 (*citing Oxford Video, Inc. v. Walker (In re Walker)*, 125 B.R. 177, 180 (Bankr.E.D.Mich.1990)).

Defendants assert that they were not given notice of the filing of the petition and that they became aware of Diaz's bankruptcy because of the present adversary proceeding. Diaz asserts that he sent notice of the bankruptcy filing to "Banco Popular de P.R., Olympic Mortgage, P.O. Box 70354, San Juan, P.R. 00936," the only address known to him of Banco Popular. Notwithstanding, Diaz admits Olympic "may have not received notice of the filing caused by Diaz's ignoring the correct mailing address." Moreover, Diaz's use of Olympic Mortgage's name in the address to which the notice was mailed, demonstrates that Diaz was aware of the transfer from Banco Popular to Olympic.

In the present case, the issue is whether Defendants' actions, before the discharge of the case, were willful, in order to constitute a violation of the automatic stay under § 362(a)(3). This Court finds that the first requisite of a willful violation is not met. Diaz admits that he ignored the correct mailing address. The Court concludes that the address used by Diaz was inadequate and that Diaz has failed to show that the defendants had notice or actual knowledge of the case. Diaz should have and could have determined the proper address, as he did to serve the summons in the instant adversary proceeding. Therefore, there was no violation of the automatic stay when Defendants tried to collect the amounts owed from the insurance companies prior to discharge because Diaz did not notify them of the filing of the petition.

2. *Duration of Automatic Stay*

■■ With respect to the duration of the automatic stay, the Bankruptcy Code provides that:

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12 or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c). In the present case, a discharge was entered on July 10, 2002. Thus, the automatic stay ended when the discharge under chapter 7 was granted. *See* 11 U.S.C. § 362(c)(2)(C). After the discharge, any act by the Defendants to collect the debt from the insurance companies was not a violation of the automatic stay because the stay was longer in effect.

C. *The Discharge Injunction*

■ When a discharge is entered the automatic stay is replaced by the discharge injunction, which operates as a permanent injunction against enforcement of all discharged debts. 11 U.S.C. § 524(a). *See also In re Kanipe*, 293 B.R. at 755. In *Kanipe*, the court makes an analogy between the automatic stay and the discharge injunction, indicating that if no notice was given to creditors, there cannot be a violation of the automatic stay, nor a violation of the discharge injunction. *Id.* at 755. *See also In re Dunn*, 324 B.R. 175, 180 (D.Mass.2005).

■ Applying the same test that applies regarding the automatic stay, Diaz did not notify Defendants of the filing of the petition. Thus, Defendants had no notice of the discharge and Diaz has failed to show that they had actual knowledge of the discharge. Thus, this Court concludes that there was no violation of the discharge injunction under 11 U.S.C § 524(a).

### D. *Discharge of Debts*

■ The Bankruptcy Code defines the scope of a discharge under 11 U.S.C. § 727(a). The Code provides that:

> [e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b). Consistent with this, the United States Supreme Court concluded that a discharge granted under § 727(a), frees the debtor from all debts existing at the commencement of the bankruptcy proceeding other than obligations excepted from discharge pursuant to 11 U.S.C. § 523. *Kontrick v. Ryan*, 540 U.S. 443, 447, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

In the case before us, Diaz received a discharge pursuant to 11 U.S.C. § 727(a) on July 10, 2002. Thus, Diaz is discharged from all debts that arose before the date of the order for relief that are not excepted from discharge pursuant to § 523.

### E. *Exceptions to Discharge*

■ Generally, a discharge under Section § 727 does not discharge a debt that was not properly scheduled in time to permit a creditor to file a timely proof of claim. *See* 11 U.S.C. § 523(a)(3)(A). In a no-asset case however there is no deadline to file a proof of claim. Therefore, the lack of notice to a creditor does not deprive the creditor of the opportunity to file a timely proof of claim. 5 *Collier on Bankruptcy,* ¶ 523.9[5], p. 523–69 (15th ed.2006).

■ In a no asset case when an unscheduled general unsecured debt does not fit within an exception to discharge under Section 523, it is dischargeable. 5 *Collier on Bankruptcy,* ¶ 523.9[5], p. 523–70 (15th ed.2006). The debt is dischargeable because it is an unsecured claim, it does not fall within an exception to discharge and there are no funds in the estate to make a distribution on the claim. *Id.* Likewise, in a no-asset Chapter 7 case, late scheduling of a debt has no effect on its dischargeability, and does not bring otherwise non-dischargeable debts within the scope of the bankruptcy discharge. *In re Moretti,* 260 B.R. 602 at 611 (2001).

### F. *Reopening a Case After Discharge*

■ Under the language of section 523(a)(3)(A) it is unnecessary to reopen a case to obtain a discharge of an unscheduled debt in a no-asset case. 5 *Collier on Bankruptcy,* ¶ 523.9[5], p. 523–69 (15th ed.2006). Nevertheless, a Court has the discretion to reopen a case under 11 U.S.C. § 350(b). This section provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

■ The bankruptcy code does not define "other cause" for purposes of reopen-

ing a case under § 350(b). "[T]he decision to reopen or not is discretionary with the court, which may consider numerous factors including equitable concerns, and ought to emphasize the substance over technical considerations." *Batstone v. Emmerling*, 223 B.R. 860, 864 (2nd Cir. BAP 1997). *See also Collier on Bankruptcy*, ¶ 350.03[5] pp. 350–10–11 (1996).

Courts should not reopen a case if doing so would be futile. *In re Jenkins*, 330 B.R. 625, 628 (Bankr. E.D.Tenn.2005). "A bankruptcy court that refuses to reopen a chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case." *In re Jenkins*, 330 B.R. 625, 628 (Bankr.E.D.Tenn.2005) (*citing In re Schicke*, 290 B.R. 792, 798 (10th Cir. BAP 2003)).

In the present case, Defendants are asking to reopen the case asserting that not only did Diaz not inform them of the bankruptcy petition, but alleging that Diaz has assets from which Defendants could collect their debt. Thus, the reopening of the case, in the eventuality that Defendants can prove that Diaz has assets, would not be a futile exercise and a remedy may be afforded to the Defendants.

### III. *Summary*

The present adversary complaint has been filed requesting that this Court determine that the actions of Defendants constitute a willful violation of the automatic stay pursuant to 11 U.S.C. § 362(h) and requesting the issuance of a permanent injunction prohibiting and permanently restraining Defendants from continuing their collection efforts. This Court concludes that the Defendants have not violated the automatic stay nor the discharge injunction because they had no notice of Diaz's petition for bankruptcy. Thus,

judgment will enter in favor of the Defendants on the plaintiff's complaint.

The Defendants have requested that the Court reopen this case and that the Court summarily revoke Diaz's discharge. Diaz concedes that the Defendants never lost their right to challenge the discharge. Thus, the Court will reopen the legal case and grant the Defendants the opportunity to file an adversary proceeding seeking to revoke discharge in compliance with Federal Rules of Bankruptcy Procedure 7001(4).

### ORDER

WHEREFORE IT IS ORDERED that Defendants' Motion Requesting Summary Judgment (Docket # 60) shall be, and it hereby is, GRANTED IN PART. Judgment shall enter in favor of the Defendants on Diaz's complaint.

IT IS FURTHER ORDERED that Defendants are granted thirty (30) days within which to file a complaint to revoke discharge pursuant to Federal Rule of Bankruptcy Procedure 7001(4). If the Defendants fail to file a complaint within this time period, they will be considered as general unsecured creditors and their debt deemed discharged.

SO ORDERED.