**In re Marc Lindroth BARRETT, Debtor.**

**No. 86–01378 ABC.**

United States Bankruptcy Court, D. Colorado.

Oct. 18, 2007.

Aaron A Garber, Lee M. Kutner, Denver, CO, for Debtor.

### OPINION AND ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

A. BRUCE CAMPBELL, Bankruptcy Judge.

Marc L. Barrett, has reopened his bankruptcy proceedings and sought to enforce his August 22, 1986 bankruptcy discharge order against his brothers, Dean R. and Bradford H. Barrett, co-trustees of the Harry Bradford Barrett Residuary Trust (the "Family Trust") and their lawyers. Dean and Bradford Barrett are together referred to as the "Trust Parties." Prior to the reopening of the case, the Trust Parties, in October 2005, sued the Debtor in Florida state court seeking to remove him as a trustee of the Family Trust for breaches of his fiduciary obligations. In the state court litigation, the Trust Parties also sought a determination that future trust distributions due the Debtor could be reduced by pre-bankruptcy obligations the Debtor owed to the Family Trust. After the reopening of this bankruptcy case, the Florida state court granted the relief sought by the Trust Parties. Presently before this Court is the Trust Parties' Motion for Summary Judgment arguing that the Florida trial court's final judgment precludes, as a matter of law, the relief now sought by the Debtor in this Bankruptcy Court. This Court agrees, and for the reasons stated below, the Trust Parties' Summary Judgment Motion will be granted.

### A. CHRONOLOGY—UNDISPUTED FACTS

On February 18, 1986, Debtor filed this Chapter 7 bankruptcy case. The Trust Parties were included as creditors on the Debtor's schedules, but were scheduled in the amount of "$0." Bradford Barrett filed a proof of claim in the bankruptcy. In the bankruptcy case there were no challenges to discharge of any particular debts or to the Debtor's overall discharge. The Debtor's discharge order was entered on August 22, 1986, and in due course the case was closed on February 12, 1990.

In October 2005, the Trust Parties filed suit against the Debtor in the Florida State Circuit Court (the "Florida State Court Suit"). In the Florida State Court Suit the Trust Parties sought removal of the Debtor as a co-trustee of the Family Trust, and either reimbursement of pre-bankruptcy obligations the Debtor owed the Family Trust or a determination that such obligations could be deducted from future trust distributions otherwise payable to the Debtor. The Florida State Court Suit was scheduled for trial in the summer of 2006. On June 27, 2006, Debtor moved in the Florida State Court Suit to amend his pleadings to, among other things, add his August 1986 bankruptcy discharge as an affirmative defense. On July 14, 2006, the Florida trial court denied this motion as untimely.

On July 24, 2006, Debtor applied to this Court to reopen this bankruptcy case. The bankruptcy case was reopened on August 3, 2006. On August 7, 2006, the Debtor initiated this contested matter by filing in the reopened 1986 bankruptcy case a motion for a show cause order seeking to have the Trust Parties and their counsel held in contempt for violations of 11 U.S.C. § 524(a)(2), the section of the Bankruptcy Code commonly known as the "discharge injunction." [1]

---

1. Section 524(a)(2) reads:
 (a) A discharge in a case under this title—
 . . . .

 (2) operates as an injunction against the commencement or continuation of any action, the employment of process, or an

The Trust Parties responded to the Debtor's show cause motion both contending that the Florida State Court Suit did not violate the debtor's discharge injunction and seeking dismissal of the show cause motion on grounds of the *Rooker–Feldman* doctrine and collateral estoppel. On September 27, 2006, this Court conducted a non-evidentiary hearing on the Debtor's motion for show cause order and the Trust Parties' motion to dismiss it. At that hearing, this Court asked for briefs on the applicability of *Rooker–Feldman* to this case.[2]

On September 28 and 29, 2006, a trial to the court was conducted in the Florida State Court Suit. On November 1, 2006, the Florida trial court entered its "Final Judgment." This ruling permanently removed the Debtor as a trustee of the Family Trust and allowed recoupment by the Family Trust of the Debtor's pre-bankruptcy debts to it from future distributions the Debtor might otherwise receive.

On December 19, 2006, this Court entered its written ruling—denying the Trust Parties' motion to dismiss the Debtor's show cause motion on *Rooker–Feld-man* grounds. This Court concluded that where a state court and federal court are proceeding with concurrent jurisdiction over the same claim or issue, final determination in the state court of the claim or issue does not, by application of *Rooker–Feldman* or otherwise, deprive the federal court of jurisdiction. This, the Court ruled, is an entirely different question than whether *res judicata* or collateral estoppel preclude the federal court from entertaining a collateral attack on the final adjudication by the state court. This Court further determined in its December 19, 2006, ruling that questions concerning preclusion of a collateral attack on the Florida state court's ruling could not be resolved on the pleadings alone. Such questions were left for summary judgment or trial. The Trust Parties' summary judgment motion now places the claim and issue preclusion questions before this Court.

### B. PRECLUSION ANALYSIS

 Analysis of the law concerning preclusion of collateral attack on another court's ruling is complicated by the reported decisions.[3] It has been recognized for

---

act, to collect, recover or offset any [debt discharged] as a personal liability of the debtor, whether or not such discharge of such debt is waived;

The immediately preceding subsection of section 524(a) "voids" any judgment for personal liability on a discharged debt. Section 524(a)(1) reads:

(a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged [in bankruptcy]....

A like provision to § 524(a)(1) was added to the predecessor Bankruptcy Act by Congress in 1970, and was carried forward in the 1978 Bankruptcy Reform Act. This provision came about in response to the perception that creditors were undermining debtors' bankruptcy "fresh starts" in post-discharge collection actions where debtors failed to raise bankruptcy discharge as an affirmative defense. *4 Collier on Bankruptcy,* § 524.L.H. [1] "Origins of Section 524 as Enacted in 1978" (15th ed. rev.2005).

2. This Court was mindful that in the past several years reported decisions have applied the *Rooker–Feldman* doctrine in a wide variety of circumstances, often in confusing and inconsistent fashion. In 2005, the United States Supreme Court addressed this doctrine that it had spawned in two cases dating from 1923 and 1983, and very severely limited and narrowed the scope of its appropriate application. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

3. Courts sometimes refer to their own lack of jurisdiction to deal with a claim or issue when they in fact have jurisdiction, but may be precluded from exercising it because an-

well more than a century that the body of preclusion law encompasses two distinct doctrines: claim preclusion and issue preclusion.[4] The former prevents re-litigation of all grounds for, or defenses to, recovery on a previously litigated cause of action, *whether or not* the claim or defense was *asserted* in the prior proceeding. Issue preclusion bars only re-litigation of issues *actually and necessarily* determined in a prior proceeding. The first of these doctrines of preclusion is ordinarily called *res judicata;* the second, collateral estoppel.

The Trust Parties contend that this Court is precluded from granting the relief sought here by the Debtor, both as a matter of *res judicata* (claim preclusion) and as a matter of collateral estoppel (issue preclusion).[5] The Court concludes, as a matter of law, that the Trust Parties are mistaken as to the former, but correct as to the latter.

### 1. *Origin of Preclusion Doctrines and a Threshold Question— Choice of Laws*

■ Preclusion doctrines of *res judicata* and collateral estoppel are supported by such fundamental policies as promoting finality, economy, consistency, and comity in the judicial process.[6] These policies and the common law have caused the federal courts generally to embrace preclusion doctrines in dealing with other federal courts.[7] State court adherence to preclusion law is prescribed by the United States Constitution which mandates:

> Full faith and credit shall be given in each state to the ... judicial proceedings of every other state....

---

other court, with concurrent jurisdiction, has already dealt with the claim or issue.

As noted above, the case law confuses the *Rooker–Feldman* doctrine with law precluding one trial court from collaterally attacking another trial court's determination. *Rooker–Feldman* concerns the absence of appellate jurisdiction of federal trial courts to review rulings of state courts. Preclusion law, on the other hand, deals with the applications of the doctrines of *res judicata* and collateral estoppel.

Some courts deal with claim and issue preclusion as if they were identical matters. They are not, and frequently they are governed by different rules. Claim preclusion or *res judicata* concerns not re-litigating the same cause of action. Issue preclusion, also referred to as collateral estoppel, concerns not re-litigating a particular issue that is not itself an independent claim or cause of action.

Rules for application of *res judicata* and collateral estoppel vary from jurisdiction to jurisdiction, sometimes with dispositive consequences. Frequently, properly applying the law of claim or issue preclusion involves an initial step of deciding which jurisdiction's rules for preclusion apply, a step sometimes ignored in reported cases.

The nomenclature of preclusion law also varies from jurisdiction to jurisdiction. For example, Florida case law refers to issue preclusion as either collateral estoppel or "estoppel by judgment." *See e.g. Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.1969); *Avant v. Hammond Jones, Inc.*, 79 So.2d 423, 424 (Fla.1955); *In re Itzler*, 247 B.R. 546, 552 (Bankr.S.D.Fla.2000).

4. *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876); *See* Atwood, B.A., "State Court Judgments in Federal Litigation: Mapping the Contours of Full Faith and Credit," *Indiana L.J.* 59, 64 (1982) (hereinafter Atwood).

5. The Trust Parties, while conceding that the Bankruptcy Court started with concurrent jurisdiction, also argue that this Court somehow lost that jurisdiction once the state court made a final ruling. Such a notion of transitory jurisdiction is misconceived.

6. Wright, Miller & Cooper, **Federal Practice and Procedure,** Vol. 18, § 4403 "Policies and Sources of Res Judicata;" *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982).

7. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980).

United States Constitution, Article IV, Section 1

By Congressional mandate, dating from 1790, federal courts have been required to give similar preclusive effect to state judicial proceedings: [8]

> [j]udicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State.

28 U.S.C. § 1738

 The rules for precisely what conditions must be met in order to preclude collateral attack of another court's determination under the doctrines of either *res judicata* or collateral estoppel vary from jurisdiction to jurisdiction. For example, just what constitutes a "final determination" or who are "parties in privity" to any given litigation may differ from state to state and under federal case law.[9] Where a federal court is faced with a question of whether to give preclusive effect to a state court's determination, it is that state's law concerning *res judicata* and collateral estoppel that must be applied by the federal court. *Mills v. Duryee,* 11 U.S. (7 Cranch) 481, 3 L.Ed. 411 (1813); *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); Atwood at p. 68; Scoles, E.F. et al., *Conflict of Laws,* § 24.8, p. 1272–73 (2004 4th ed.).[10] To follow the preclusion law of the state jurisdiction that rendered the initial decision only makes sense in giving full faith and credit to that state's judicial proceedings. This gives no more or less force to the state court's ruling than would another court in that state. Accordingly, this Court follows Florida law in deciding whether the Debtor is precluded from mounting a collateral attack in this federal Bankruptcy Court on the decision adverse to him in the Florida State Court Suit.

## 2. *Florida Claim Preclusion (Res Judicata)*

 The Trust Parties argue that the Debtor's efforts in this Court to enforce the injunction contained in his bankruptcy discharge "are barred by the doctrine of *res judicata."* The Trust Parties, however, concede that for *res judicata* to apply, Florida law requires identity of the claims or causes of action in each of the proceedings. Although the Florida State Court Suit and the contested matter initiated by the Debtor's show cause motion in this Court have issues in common, they clearly do not involve the same claim or causes of action: the former sought to remove the Debtor as a trustee and to determine a right to set-off or recoupment of debits and credits between the Family Trust and the Debtor; the latter seeks to enforce a discharge injunction. The evidence necessary to sustain the claims in these separate proceedings is not essentially the same. *See Gordon v. Gordon,* 59 So.2d 40, 44

---

8. *Id.; Kremer v. Chemical Const. Corp.,* 456 U.S. at 462–63, 102 S.Ct. at 1887–88 (1982).

9. Compare *Rantz v. Kaufman,* 109 P.3d 132, 141 (Colo.2005) (under Colorado law, judgment pending on appeal is not final for purposes of issue preclusion), with *Ruyle v. Continental Oil Co.,* 44 F.3d 837, 846 (10th Cir. 1994) (under Federal view, pendency of appeal does not prevent application of collateral estoppel doctrine unless appeal involves full trial de novo).

10. This long standing rule is inapplicable only where state proceedings fail to satisfy "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chemical Const. Corp., supra* at 481, 102 S.Ct. at 1897–98. The instant case presents no such challenge to due process in the Florida State Court Suit.

(Fla.1952). Claim preclusion by the doctrine of *res judicata* is simply not applicable.

### 3. Florida Issue Preclusion (Collateral Estoppel or Estoppel by Judgment)

■ Under Florida law, estoppel by judgment (collateral estoppel) applies "to prevent a party from re-litigating questions common to two causes of action when those questions were actually decided in the first." *Avant v. Hammond Jones, Inc.*, 79 So.2d 423, 424 (Fla.1955). In the instant case the question common to the Florida State Court Suit and the contested matter before this Bankruptcy Court is, whether the Trust Parties' efforts to reduce future distributions from the Family Trust to Debtor by Debtor's unpaid pre-bankruptcy obligations to the Family Trust are prohibited by, and would be in violation of, this Court's 1986 discharge order and injunction.

■ Under Florida collateral estoppel law, three elements must be present in order for a determination in a prior proceeding to preclude re-litigation of an issue in a second proceeding: (1) the parties or their privies must be the same in both cases; (2) the issue must be the same in both cases; and (3) the issue must have been fully litigated in a court of competent jurisdiction. *See Dep't of Health and Rehabilitative Services v. B.J.M.*, 656 So.2d 906, 910 (Fla.1995); *In re Itzler*, 247 B.R. 546 (Bankr.S.D.Fla.2000) (applying Florida law). There is no dispute over the first two of these elements. The Debtor and the Trust Parties are the same in the Florida State Court Suit and before this Court. Each case presented the same question—does the Debtor's discharge prevent debiting his future trust distributions with his unpaid obligations to the Family Trust? The presence of the third element required for Florida estoppel by

judgment—whether the issue was "fully litigated" in the Florida State Court Suit—is less apparent.

■ In the initial round of pleadings in the Florida State Court Suit, the Debtor failed to raise his bankruptcy discharge as an affirmative defense to the Trust Parties' claims. Shortly before trial, the Debtor moved to amend his answer in the Florida State Court Suit, seeking to assert his bankruptcy discharge as an affirmative defense. The Florida trial court denied the motion as untimely and, following trial, entered final judgment for the relief sought by the Trust Parties. In *dicta* the Florida trial court noted that even had it considered the Debtor's discharge it would have reached the same result under its interpretation of Tenth Circuit authorities concerning the impact of a bankruptcy discharge on rights of recoupment. This Court does *not* address that determination in considering the preclusive effect of the judgment in the Florida State Court Suit. Because of his untimely raising of this affirmative defense, the Debtor did not, in fact, litigate the merits of his bankruptcy discharge as a defense. The essential question before this Court is, having had an opportunity to raise his discharge in the Florida State Court Suit and failing timely to take that opportunity, has this Debtor "fully litigated" the issue for purposes of Florida collateral estoppel law, thus precluding re-litigation of the issue in this Court?

■ Applying Florida case law, this Court answers that question in the affirmative. Under Florida preclusion law, "[a] defendant who fails to raise an available defense will be precluded from arguing its existence in a subsequent action, even where the latter action involves a different cause of action." 32A *Fla. Jur.2d*, "Judgments and Decrees," § 143 (Thompson West 2003). The Florida Su-

preme Court articulated this proposition as early as 1938. In *Equitable Life Assur. Soc. v. McKeithen*, 130 Fla. 568, 178 So. 127 (1938), an insured successfully sued his insurer to establish a disability. In a later suit the insured sued for payments under the same policy, and the insurer, for the first time, raised fraud in the inducement of the contract as a defense. The defense was rejected on demurrer by the trial court, and the Florida Supreme Court affirmed, noting that the affirmative defense of fraud in the inducement,

> ... is a defense which must be set up when defendant has an opportunity to plead it; if not asserted in due time, it will be barred by the judgment, and cannot be set up as a defense to a second action or be made the basis of a subsequent suit by the defendant.
>
> ....
>
> ... appellant cannot set up defenses that existed and were known to him at the time of the first trial and which he did not then take proper advantage of.

*Id.* at 130–31 (citation omitted).

In *Avant v. Hammond Jones, Inc.*, 79 So.2d 423 (Fla.1955), a seller on an installment sales contract sued to replevy eight trucks, four of which had spreaders welded to them after the trucks were delivered. The buyer/defendant defaulted. The buyer later initiated a suit against the seller claiming the seller had converted the spreaders. The trial court in the second suit granted summary judgment in favor of seller/defendant as a matter of *res judicata*. The Florida Supreme Court affirmed, but ruled that the proper basis of the preclusion was estoppel by judgment, not *res judicata*, i.e. issue preclusion, not claim preclusion. The Florida Supreme Court noted that in failing to make any claim in the first suit in which the buyer

defaulted, he "estopped himself from raising the point by a subsequent and different action." *Id.* at 424. The Court reasoned that the buyer had had "an abundant opportunity to isolate for adjudication the claim he now makes." *Id.* It concluded the issue, for purposes of collateral estoppel, had been "actually determined" in the first case in which the buyer had defaulted.

In *Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.1969), the Florida Supreme Court reached the same result in a later case where an installment sale buyer defaulted in an earlier replevin suit. He then sued the seller for breach of the underlying contract as orally modified. The Florida Supreme Court dispensed with the second suit applying the doctrine of estoppel by judgment and precluding collateral attack on the default judgment in the earlier replevin case. The Florida Supreme Court concluded,

> Having failed to defend on whatever ground was then available and having permitted replevin by default, petitioner may not now be heard on his proffer of an oral argument ... to vary the terms of the written contract.

*Id.*, at 330. *See also Wise v. Tucker*, 399 So.2d 500, 502–03 (Fla.App.1981); *In re Itzler*, 247 B.R. 546, 550–54 (Bankr. S.D.Fla.2000).

### 4. The Final Judgment in the Florida State Court Suit is Not "Void" Under Bankruptcy Code § 524(a)(1)

█ The Debtor argues that the judgment in the Florida State Court Suit cannot be given preclusive effect because it is "void" under the discharge provisions of the Bankruptcy Code.[11] That provision of the bankruptcy law voids any judgment that is a determination of personal liability "*with respect to any debt discharged*" in

---

**11.** See text of 11 U.S.C. § 524(a)(1) at note 1, *supra*

bankruptcy. To argue that this voids the Florida state court judgment begs the very question of preclusion of collateral attack on the Florida judgment by the doctrine of collateral estoppel. The Florida state trial court finally determined, rightly or wrongly, that the Debtor's obligation in question was not a "debt discharged" for purposes of providing a defense to the Trust Parties' claims in the Florida State Court Suit. Accordingly, the Florida judgment implicitly determined that section 524(a)(1) of the Bankruptcy Code is not applicable, as that section applies only to, *"any debt discharged...."* And, under the full faith and credit mandate of 28 U.S.C. § 1738, it is that very determination of inapplicability of section 524(a)(1) of the Bankruptcy Code that precludes this federal bankruptcy court's collateral attack on the Florida state trial court's final judgment. If the Debtor seeks review of the Florida trial court's determination that his bankruptcy discharge provides no defense to the Trust Parties' claims, that review must be in the Florida state appellate courts.[12]

### 5. 28 U.S.C. § 1738 Applies to Collateral Estoppel in This Case

■ The only analysis that would permit this Court to determine that the Florida state court's judgment is "void" under section 524(a)(1) of the Bankruptcy Code requires this Court to conclude that either bankruptcy in general or section 524(a)(1) of the Bankruptcy Code in particular is an "implied exception" to the statutory full faith and credit mandate of 28 U.S.C.

§ 1738. That is to say that, in enacting the provisions of section 524(a)(1) in 1978, Congress, by implication, repealed in part 28 U.S.C. § 1738. This Court declines to reach that conclusion.[13]

■ Such exceptions to section 1738 are rare indeed, "not favored," and exist only where "the intention of the legislature to repeal [is] clear and manifest."[14] In the early 1980's the United States Supreme Court concluded unequivocally that the full faith and credit mandate of 28 U.S.C. § 1738 does not give way to implied exceptions merely because a federal forum is asked to collaterally attack a prior determination concerning an issue of fundamental importance. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (alleged violation of Fourth Amendment rights on warrantless home search); *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (alleged Title VII discrimination on the basis of national origin and religion). Furthermore, the United States Supreme Court has twice in the not distant past stated that, for purposes of collateral estoppel, 28 U.S.C. § 1738 may be applied by a bankruptcy court in dischargeability litigation to preclude collateral attack on a prior state court ruling. In *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979), the Court so noted in *dicta.* In *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the United States Supreme Court held this to be the case outright, stating:

....We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).

---

**12.** The Debtor has apparently taken such an appeal. The record before this Court is silent as to its status.

**13.** Accord, *In re Itzler,* 247 B.R. 546, 549 (Bankr.S.D.Fla.2000); *But cf. In re Dabrowski,* 257 B.R. 394, 406–08 (Bankr.S.D.N.Y.

2001) and cases discussed therein at notes 27–31.

**14.** *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982); Atwood, at p. 73.

*Id.* at 284 n. 11, 111 S.Ct. 654.

Not only is Title 11 in general not an explicit or implied exception to 28 U.S.C. § 1738, the 1978 enactment by Congress of the provisions of section 524(a)(1) was not an implied partial repeal of the full faith and credit mandate of 28 U.S.C. § 1738. In holding that Title VII did not, by implication, partially repeal or create an exception to section 1738, the U.S. Supreme Court counseled that whenever possible, statutes should be read consistently. That notwithstanding, it identified two well-settled categories of "repeals by implication:"

> (1) where provisions in the two acts are in irreconcilable conflict . . . and
>
> (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute
>
> *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976)).

These categories do not fit section 524(a)(1) of the Bankruptcy Code. Had Congress clearly intended to repeal section 1738's prohibition of collateral attack on state court judgments when it enacted section 524(a)(1), it is likely it would have created exclusive jurisdiction in the bankruptcy courts in dealing with questions of dischargeability of debts. It would make little sense to create concurrent jurisdiction with state courts to adjudicate dischargeability only to subject state court determinations thereon to collateral attack. See 28 U.S.C. §§ 1334(b) and 157(b)(2)(I).

There is no irreconcilable conflict between section 524(a)(1) of the Bankruptcy Code and the full faith and credit mandate of section 1738. In instances where applicable state issue preclusion law prevents collateral attack in a second forum, 28 U.S.C. § 1738 controls, and the determination in the initial state forum stands, notwithstanding section 524(a)(1). On the other hand, if applicable state law on collateral estoppel would not bind the second federal forum, the ruling in the initial state forum could be collaterally attacked and voided under section 524(a)(1). The two federal statutes co-exist without "irreconcilable conflict." A "clear and manifest" Congressional intent for section 524(a)(1) to partially repeal 28 U.S.C. § 1738 by implication is not apparent.

### C. CONCLUSION

For the reasons stated above, it is

ORDERED that the Trust Parties' Motion for Summary Judgment is GRANTED;

FURTHER ORDERED that the Debtor's application to have the Trust Parties and their counsel found in contempt of the Court's August 22, 1986 discharge order in this case is DENIED;

FURTHER ORDERED that this bankruptcy case shall be closed; and

FURTHER ORDERED that judgment shall enter accordingly.