992 So.2d 403 (2008)
Gregory ZITANI, Appellant,
v.
Charles REED and Sharon Reed, Appellees.
No. 2D07-4777.
District Court of Appeal of Florida, Second District.
October 15, 2008.
Benjamin G. Martin, Sarasota, for Appellant.
*404 Karen E. Maller of Powell Carney Maller Ramsay & Grove, P.A., St. Petersburg, for Appellees.
ALTENBERND, Judge.
Gregory Zitani appeals a final summary judgment dismissing his action to "vacate" a judgment that Charles and Sharon Reed obtained against him in the State of California and domesticated in Sarasota County, Florida. Mr. Zitani maintains that the California judgment was entered against him in violation of a bankruptcy discharge injunction and is thus void and unenforceable.
The circuit court dismissed Mr. Zitani's complaint to vacate the judgment on the theory that all material legal issues had already been resolved against Mr. Zitani in the prior California action and thus the Reeds were entitled to summary judgment as a matter of collateral estoppel. We are uncertain whether the circuit court's reasoning was correct,[1] but we conclude that it reached the correct result.
Although Mr. Zitani asked the Sarasota circuit court to "vacate" the judgment, his request is more accurately described as one to prevent the Sarasota circuit court from recording and enforcing the California judgment under the Florida Enforcement of Foreign Judgments Act. The issue presented is thus whether the circuit court in Florida properly domesticated the California judgment under the procedures of the Florida Enforcement of Foreign Judgments Act. §§ 55.501-.509, Fla. Stat. (2005). The judgment was entered by a California state court that had both subject matter jurisdiction over the claim and personal jurisdiction over Mr. Zitani. A Florida court is generally obliged to give full faith and credit to a foreign state's judgment and lacks authority to simply vacate a judgment entered by a trial court in another state.
Mr. Zitani argues that the California judgment was entirely void from its inception because it was entered after he had received a discharge in a no-asset bankruptcy case and in violation of the bankruptcy discharge injunction. The Reeds, although they were not listed as creditors in the bankruptcy, apparently knew about the bankruptcy discharge yet proceeded to obtain a default judgment against Mr. Zitani on multiple theories, some of which may have permitted a discharge of the resulting obligation in bankruptcy and others of which may have resulted in a nondischargeable obligation. The Reeds did not expressly allege in the California action that the claims had not been discharged in bankruptcy nor did they seek an express determination of the issue of dischargeability in the California state court. Likewise, Mr. Zitani declined to defend the California action or raise his discharge as a defense, and he has since affirmatively encouraged the bankruptcy court in California to abstain from resolving these bankruptcy issues.
We conclude that the California judgment may be voidable in whole or in part but that it was not void from its inception as a result of Mr. Zitani's discharge in bankruptcy. It may be that either the California state court or the bankruptcy court in California still has the authority to vacate the California judgment or otherwise prevent its enforcement, but the Sarasota circuit court did not err in recording the existing judgment and giving it full faith and credit and in denying Mr. Zitani's *405 claim to vacate the judgment. Accordingly, we affirm the order on appeal.

I. PROCEEDINGS IN CALIFORNIA SUPERIOR COURT
Mr. Zitani is a lawyer who was previously licensed to practice law in California but now is licensed to practice law in Florida. Mr. and Mrs. Reed retained Mr. Zitani in San Diego, California, to represent them in connection with an automobile accident in 1990 in which they both apparently sustained injuries. Mrs. Reed also retained Mr. Zitani to represent her concerning a slip-and-fall accident at her place of employment, which happened to be a chiropractic clinic. The Reeds claimed that Mr. Zitani mishandled these cases and then disappeared.
The Reeds thus retained another lawyer who sued Mr. Zitani in a California superior court in 1995. The complaint included two other defendants, a lawyer and a law firm. The complaint contained twelve causes of action, including breach of contract, fraud, conversion, and negligence. It sought both compensatory and punitive damages. Mr. Zitani was served with this complaint but never appeared to defend the lawsuit. A default was entered against Mr. Zitani in August 1995. Record documents suggest that Mr. Zitani somehow orally communicated to the California court the existence of the bankruptcy and the court verified that no bankruptcy stay was in place before proceeding to judgment.[2] Ultimately, in April 1998, the superior court entered a judgment against Mr. Zitani in favor of Mr. Reed for $45,000 and in favor of Mrs. Reed for $159,178.66. This judgment was entered on "all causes of action" and included itemized amounts for special, compensatory, and punitive damages.
Mr. Zitani claims he did not defend this action because he had filed a petition for bankruptcy in August 1994. This bankruptcy was a no-asset bankruptcy. It allegedly was filed after the contingent liability to the Reeds arose but before the Reeds filed their lawsuit. Mr. Zitani did not list the Reeds as creditors, although he now claims they had actual notice of the proceeding. Mr. Zitani obtained a discharge from the bankruptcy court in January 1995. The discharge states in pertinent part:
2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:
(a) debts dischargeable under 11 U.S.C. § 523;
(b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) and 11 U.S.C. § 523(a);
(c) debts determined by this court to be discharged.
3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void in paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts....
From our record it does not appear that any additional activity occurred in California concerning the 1998 judgment during *406 the following years. Mr. Zitani never took any steps to appeal, set aside, or otherwise challenge the judgment. He apparently assumed the judgment was void from its inception in light of his bankruptcy discharge but never sought confirmation of this from the bankruptcy court.

II. PROCEEDINGS IN FLORIDA TO DOMESTICATE THE FOREIGN JUDGMENT
In November 2005, the Reeds took the steps necessary to record this foreign judgment in Sarasota County, Florida, pursuant to section 55.501. Mr. Zitani was provided with notice of the recording. He did not file an action within thirty days contesting the enforcement of this judgment in Florida as authorized by section 55.509. Instead, he responded with a "suggestion of bankruptcy" and a representation that he was retaining counsel to reopen the bankruptcy case to determine whether the California proceedings were void as a violation of bankruptcy law. He alleged that "all litigation" concerning the judgment must be stayed until a determination by the bankruptcy court. The Reeds moved to strike the suggestion of bankruptcy, which the circuit court granted.
Because Mr. Zitani did not file an action within thirty days, the California judgment became enforceable like any judgment entered by a circuit court in Florida. See §§ 55.503(1), .505(3), .507; Nichols v. Nichols, 613 So.2d 137, 139-40 (Fla. 4th DCA 1993). Mr. Zitani's delay, however, did not bar him from seeking to challenge the judgment's enforcement in Florida. See Jones v. Directors Guild of Am., Inc., 584 So.2d 1057, 1060 (Fla. 1st DCA 1991). Thus, he filed the action to vacate the judgment in an effort to prevent further enforcement proceedings in Florida. In his complaint, he expressly asked the Florida court to "[d]etermine that [the Reeds'] claims of indebtedness by [Zitani] are discharged pursuant to 11 U.S.C. section 727(b) and are not one of the exceptions to discharge pursuant to 11 U.S.C. 523[.]" He also requested "damages and attorneys' fees ... for [the Reeds'] willful violation of the discharge injunction."

III. A BRIEF RETURN TO THE CALIFORNIA BANKRUPTCY COURT
Apparently, Mr. Zitani decided not to take the steps necessary to reopen his bankruptcy proceeding. The Reeds, however, filed a motion to reopen that proceeding in September 2006 to determine what, if any, impact the bankruptcy had had upon their judgment. Mr. Zitani responded with a motion for abstention, arguing that California no longer had any interest in this matter and that the bankruptcy court should allow the Florida courts to resolve this matter under concurrent jurisdiction. The bankruptcy court agreed that it had "no particular interest in the outcome" because it would not generate assets for creditors.[3] It decided that the motion to abstain would result in "judicial economy" and thus declared that the Florida courts had concurrent jurisdiction and were "presumed competent" to resolve the issues regarding discharge and the enforceability of the California judgment. We cannot avoid the observation that the "judicial economy" perceived by the bankruptcy judge was his alone. The Florida courts are now left attempting to resolve issues of bankruptcy law arising out of alleged misconduct by a lawyer licensed in California. The resulting legal delays *407 have undoubtedly frustrated Mr. Reed, who still lives in California.

IV. A RETURN TO THE "PRESUMPTIVELY COMPETENT" FLORIDA COURTS
When the California bankruptcy court declined to resolve the matter, the circuit court proceeded to address the issues presented by the complaint to vacate the judgment. It received extensive arguments from counsel and decided that the matter could be resolved on summary judgment. Natural legal instincts convinced the experienced trial judge that Mr. Zitani could not sit on his discharge injunction for a decade with knowledge of the Reeds' claims and then challenge this judgment in this manner.
The circuit court signed a lengthy final summary judgment which begins:
This Court is mindful of the concept of law pertaining to a court adopting one party's proposed order verbatim.... In this instance, however, the defendants' proposed order reflects this Court's opinions, findings, and the law.
Accordingly, the trial court signed the Reeds' proposed order verbatim despite its somewhat slanted version of the case. We do not fault the trial court for requesting help with its judgment because bankruptcy law can be confusing for those who do not practice in the field with regularity. However, at least to some degree the analysis provided to the trial court by the Reeds' attorney reflects the bias of their position and fails to squarely address the tactics they chose to employ in the California state court proceeding. This is the order we review on appeal.

V. THE NATURE OF A BANKRUPTCY DISCHARGE INJUNCTION FOR THE CLAIM OF AN UNSCHEDULED CREDITOR
One of the essential functions of bankruptcy is to give debtors a fresh financial start. As a result, a debtor who files a chapter 7 bankruptcy petition normally obtains an order of discharge that operates as an injunction to bar future debt collection activity by his or her former creditors. The relevant provision of the bankruptcy code states in pertinent part:
(a) A discharge in a case under this title
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and....
11 U.S.C. § 524(a)(1), (2) (1994).[4]
In most situations, the discharge is intended to be an "absolute defense" such that a debtor does not need to allege and prove the discharge as an affirmative defense in a case brought by a creditor following the entry of the discharge. See In re Pavelich, 229 B.R. 777, 781-82 (9th Cir. BAP 1999). When a creditor is a scheduled *408 creditor, he or she receives notice of the bankruptcy proceeding and has the opportunity to bring an adversary proceeding within the bankruptcy to establish that the debt should be not discharged. See, e.g., Fed. R. Bankr.P. 4007. For such a creditor, treating the discharge as an absolute defense seems reasonable.
When a creditor is not scheduled, the nature of the discharge is more problematic. 11 U.S.C. § 524(a)(1) "voids" a creditor's judgment "to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727." Thus, the language of the statute seems rather categorical with the usage of the word "voids," but this absolute term is immediately qualified to apply only "to the extent" of a personal liability of the debtor that was discharged under section 727. See also In re Pavelich, 229 B.R. at 782 ("Thus, all judgments purporting to establish personal liability of a debtor on a discharged debt, including judgments obtained after bankruptcy, are void to that extent.") (Emphasis added.)
The law is clear that debts arising prior to the filing of the bankruptcy petition are subject to discharge without regard to whether they are listed in the debtor's schedules. As the Ninth Circuit explained in In re Beezley, 994 F.2d 1433, 1435 (9th Cir.1993):
Section 727(b) of the Bankruptcy Code states in part: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter [i.e., the date of the bankruptcy filing]...." "The operative word is `all'. There is nothing in Section 727 about whether the debt is or is not scheduled. So far as that section is concerned, a pre-bankruptcy debt is discharged, whether or not it is scheduled." In re Mendiola, 99 B.R. 864, 865 (Bankr.N.D.Ill.1989). See In re Stecklow, 144 B.R. 314, 317 (Bankr.D.Md. 1992) ("breadth of the discharge" under § 727 is "comprehensive"); In re Thibodeau, 136 B.R. 7, 8 (Bankr.D.Mass.1992) ("§ 727(b) itself makes no exception for unlisted debts"). Thus, unless section 523 dictates otherwise, every prepetition debt becomes discharged under section 727.
Id. at 1435.
Although prepetition debts are subject to discharge regardless of whether they are scheduled and the creditors receive notice of the bankruptcy, section 727(b) makes clear this is "[e]xcept as provided in section 523 of this title[.]" Section 523 then lists the types of debts that are not dischargeable in bankruptcy. Examining section 523 in light of the claims the Reeds made in the California action, section 523 has no provisions that prevent discharge of debts based on breach of contract or simple negligence, but it does provide that a debt is nondischargeable if it is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Thus, a review of the California pleadings suggests that some of the Reeds' claims against Mr. Zitani may have been discharged while other claims may not have been discharged. The California judgment, however, does not facially distinguish between the various claims and the amount of damages awarded for each.
Contrary to Mr. Zitani's position, the case law does not appear to give him the luxury of simply ignoring a post-discharge lawsuit by an unscheduled creditor in his no-asset bankruptcy when the lawsuit contains theories that may not have been subject to discharge. At least three approaches to this problem seem to exist. *409 As succinctly explained in In re Mendiola, 99 B.R. 864, 870 (Bankr.N.D.Ill.1989):
There are three ways to litigate dischargeability after a case is closed. First, if a creditor pursues a lawsuit on the claim, the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over that lawsuit can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the [d]ebtor or the creditor can move to reopen th[e] case for the purpose of filing a complaint to determine dischargeability. Third, the [d]ebtor can bring an action in th[e Bankruptcy] Court to enforce the discharge injunction against a creditor attempting to collect discharged claims, which is contained in 11 U.S.C. § 524(a). The virtue of any of these procedures, as opposed to a motion to reopen to amend schedules, is that it will focus on the real dispute (if there is a real dispute) between the partiesthe dischargeability of the debt.
See also In re Keenom, 231 B.R. 116, 125 (Bankr.M.D.Ga.1999). The case law provides examples of all of these approaches. See, e.g., Walter v. Placontrol, Inc. 65 Mass.App.Ct. 298, 839 N.E.2d 850 (2005); In re Paine, 250 B.R. 99 (9th Cir. BAP 2000); In re Diaz Rodriguez, 357 B.R. 691 (Bankr.D.P.R.2006); In re Davie, 302 B.R. 432 (Bankr.W.D.N.Y.2003).
Among these various approaches to the problem, we have found no case in which the issue of discharge has been delegated years later to the courts of another state in the context of an action to domesticate a foreign judgment. We can find no policy that would recommend such a solution when the three methods suggested above are readily available and far more likely to reach a correct result.
Mr. Zitani points to the language that a judgment entered in violation of a discharge injunction is "void" to argue that this prevents a Florida court from domesticating the judgment. Generally, a void judgment is one entered without subject matter jurisdiction or personal jurisdiction, such that it is so defective as to have no legal force or effect. Sterling Factors Corp. v. U.S. Bank Nat'l Ass'n, 968 So.2d 658, 665 (Fla. 2d DCA 2007). In contrast, a voidable judgment is a judgment that has been entered based upon some error in procedure that allows a party to have the judgment vacated, but the judgment has legal force and effect unless and until it is vacated. Id. At least one court has rejected the idea that a judgment arguably entered in violation of a bankruptcy discharge injunction is "void" in the manner that term is used to determine whether full faith and credit should apply to a foreign judgment. See In re Barrett, 377 B.R. 667, 675-76 (Bankr.D.Colo.2007).
We do not foreclose the possibility that a foreign judgment clearly and facially entered in violation of bankruptcy discharge injunction may not be entitled to full faith and credit in this state, thus preventing its enforcement under sections 55.501-509. We are unwilling to accept, however, that a Florida court can "vacate" a foreign judgment that appears to be valid on its face when factual disputes arise over whether the obligations contained in the judgment were discharged in bankruptcy. Under those circumstances, the issues regarding the validity of the judgment or the dischargeability of all or a portion of the judgment are left to the court that entered the judgment or the bankruptcy court that entered the discharge injunction. Thus, we affirm the trial court's decision that allows the California judgment to remain a recorded judgment in Florida with all available methods of collection.
*410 Having so held, however, we must observe that the judgment appears to include substantial monetary awards for claims that most likely were discharged in the bankruptcy. Just as Mr. Zitani did not elect one of the several options to protect himself from this judgment in California, the Reeds appear to have intermingled claims with full knowledge that some of them had been discharged. We express no opinion on whether Mr. Zitani can now return to either the California state court or the bankruptcy court to obtain relief that he chose not to request in those proceedings previously. If the California judgment is ever vacated or modified, Mr. Zitani may then have the option to file a proceeding in this state to modify the judgment that is now of record in Florida.
Affirmed.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] The reasoning appears similar to that discussed in In re Barrett, 377 B.R. 667, 674-75 (Bankr.D.Colo.2007).
[2] See 11 U.S.C. § 362(a), (c)(2) (providing that the filing of a bankruptcy petition operates as an automatic stay of the commencement or continuation of a judicial action against that debtor, which continues until the case is closed, dismissed, or a discharge is granted or denied).
[3] Given that Mr. Zitani effectively alleges a violation of the bankruptcy court's discharge injunction, it is odd that the court would find no interest in the outcome.
[4] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L. No. 109-8, § 215, 119 Stat. 23, 54 (Apr. 20, 2005), significantly changed the provisions regarding dischargeability in 11 U.S.C. § 524, but this language remained the same.